JUDGE PAULEY **16 CV 8530**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC and PEARSON EDUCATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DOES 1-10, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT** <br><br> and <br><br> **DEMAND FOR JURY TRIAL** |



Plaintiffs MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC and PEARSON

EDUCATION, INC. ("Plaintiffs"), for their Complaint against Defendants DOES 1-10

("Defendants"), hereby allege, on personal knowledge as to matters relating to themselves and

on information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      This is a case involving egregious violations of the federal laws concerning

copyright infringement and trademark infringement.  It arises from the intentional distribution

and sale of counterfeit textbooks at the expense of authors, students, publishers, and others.

2.      Plaintiffs are leading educational publishers who develop, market, distribute,

license, and sell a comprehensive range of traditional and digital educational content and tools to

professionals and students of all ages.  Plaintiffs' textbooks are among the most popular and

widely used titles in their fields.

3.      Defendants are anonymous persons or entities who perpetrate a large-scale

operation that victimizes Plaintiffs by misappropriating their creative efforts and valuable brands.

They do so by creating fictitious identities to evade detection.  Under their scheme, Defendants

have distributed and sold thousands of copies of counterfeit textbooks and continue to do so. The textbooks Defendants interject into the marketplace are not the legitimate and authorized versions published by Plaintiffs, but are counterfeit versions that infringe on Plaintiffs' copyrights and trademark rights.

## JURISDICTION AND VENUE

4.     This is an action arising under the Copyright Act, 17 U.S.C. § 101, *et al.* and the Lanham Act § 32, 15 U.S.C. § 1114.

5.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     Personal jurisdiction in this district is proper, pursuant to N.Y. C.P.L.R. § 302 because Defendants (a) have committed acts of copyright and trademark infringement within New York, (b) have transacted business within New York in connection with the infringement alleged herein, and (c) have committed acts of copyright and trademark infringement outside the State, which caused injury to Plaintiffs within the State, and Defendants expected or should reasonably have expected such acts to have consequences in this State and derive substantial revenue from interstate or international commerce.

7.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 28 U.S.C. § 1400(a).

## THE PARTIES

8.     Plaintiff PEARSON EDUCATION, INC. ("PEARSON"), is a Delaware corporation with its principal place of business at 330 Hudson Street, New York, New York 10013.

9.     Plaintiff MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC ("MHE") is a Delaware limited liability company with its principal place of business at 2 Penn Plaza, New York, New York 10020.

10.    Defendants DOES 1-10 are individuals or entities whose true names and identities are unknown to Plaintiffs at this time but who have distributed, offered for sale, and/or sold counterfeit textbooks as described above and continue to do so.  Plaintiffs believe that information obtained in discovery will lead to the identification of the true names, identities, and locations of DOES 1-10 and permit Plaintiffs to amend this Complaint to state the same.

## PLAINTIFFS' BUSINESSES, COPYRIGHTS, AND TRADEMARKS

11.    PEARSON is a world-renowned publisher of educational books and multimedia materials in all subject areas and grade levels, operating under numerous imprints, with a rich educational and literary heritage.  With well-known brands such as Pearson, Prentice Hall, Pearson Longman, Pearson Scott Foresman, Pearson Addison Wesley, Pearson NCS, and many others, PEARSON provides quality content, assessment tools, and educational services in all available media.

12.    MHE is a world-renowned publisher of educational books and multimedia materials in all subject areas and grade levels, operating and publishing under many distinguished and well-known imprints, with a rich educational and literary heritage.  MHE's textbooks have achieved acclaim not only in the United States, but also in many other countries around the world.

13.    Plaintiffs' publications include physical and digital textbooks (collectively, "Textbooks").  Plaintiffs' Textbooks are widely available in the marketplace for sale, rental, or subscription, including from physical and online bookstores.

14.     Plaintiffs are the copyright owners of, and/or the owners of the exclusive rights under copyright in, *inter alia*, those works or derivative works consisting of the Textbooks described on **Exhibit A** (hereinafter, "Plaintiffs' Authentic Works").  Plaintiffs, or their affiliates, have each obtained registrations duly issued by the U.S. Copyright Office protecting their respective copyrights in Plaintiffs' Authentic Works.

15.     Plaintiffs' Authentic Works bear trademarks and service marks as set forth on **Exhibit B** (hereinafter, "Plaintiffs' Marks"), which Plaintiffs or their affiliates have duly registered on the Principal Registrar of the United States Patent and Trademark Office.  Plaintiffs own or are the exclusive licensee of Plaintiffs' Marks.  Plaintiffs' Marks are distinctive and arbitrary and in some cases are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  All of the registrations listed on **Exhibit B** are valid, subsisting, unrevoked and not cancelled.  Plaintiffs also own common law rights in these and other trademarks.

16.     Plaintiffs invest heavily in Textbook publishing.  Each year they incur substantial costs for author royalties or other costs of content creation or licensing, copyediting and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of their editorial offices.

17.     Plaintiffs and/or their predecessors have also invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs and their trademarks.  Plaintiffs invest significant resources annually in the worldwide advertisement and promotion of their goods and services under their respective marks.

18.     The revenue from Plaintiffs' sales and rentals of Textbooks represents a substantial portion of Plaintiffs' respective annual revenues, and is therefore important to their financial health.  Both publishers and authors alike are deprived of income when their Textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

19.     Plaintiffs' Marks and the goodwill of the business associated with them in the United States and throughout the world are of tremendous value and have become associated in the public mind with Plaintiffs' textbooks of the very highest quality and reputation finding their source from Plaintiffs.

20.     Plaintiffs suffer serious financial injury when their copyrights and trademarks are infringed.  A substantial decline in revenue from sales or rentals of Plaintiffs' Textbooks could cause Plaintiffs to cease publication of one or more deserving Textbooks.  This would have an adverse impact on the creation of new Textbooks, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving Textbooks.

## DEFENDANTS' UNLAWFUL ACTIVITIES

21.     Beginning at a date unknown to Plaintiffs at this time but since at least August 2016, and continuing through to today, Defendants have worked in active concert and participation with one another as part of one joint scheme to distribute and sell counterfeit copies of Plaintiffs' Authentic Works bearing Plaintiffs' Marks (hereinafter, the "Counterfeit Textbooks") as well as conceal their involvement in the unlawful activity.

22.     Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully distributed and sold the Counterfeit Textbooks and continue to do so.  The Counterfeit Textbooks are not authorized copies of Plaintiffs' Authentic Works.  Plaintiffs did

not print, or authorize the printing of, the Counterfeit Textbooks.  Plaintiffs did not ever sell, or

authorize others to sell, the Counterfeit Textbooks.

23.     Defendants, without any authorization or license from Plaintiffs, have knowingly

and willfully used and continue to use Plaintiffs' Marks in connection with the advertisement,

offer for sale, and/or sale of the Counterfeit Textbooks.  The Counterfeit Textbooks are not

genuine.  Defendants purport to sell the legitimate and authorized versions published by

Plaintiffs, but actually provide counterfeit versions to customers.

24.     Defendants' infringing activities are substantial.  The Counterfeit Textbooks

discovered to date that Defendants have distributed and sold include those described on **Exhibit

A**.  Such list is representative, not comprehensive, and will be updated over the course of

discovery in this action.

25.     Defendants sold thousands of copies of Counterfeit Textbooks to Chegg, Inc.

("Chegg"), who in turn sold them to another wholesaler, MBS Textbook Exchange, Inc.

("MBS").  MBS determined the books likely to be counterfeits and notified Plaintiffs.  Plaintiffs

inspected the textbooks and confirmed that the textbooks were indeed counterfeit.

26.     Defendants perpetrate their illegal activities through Chegg's automated, online

"buyback" program that allows students to sell back their used textbooks for cash.  Defendants

create fictitious accounts with fictitious names and addresses in order to sell the Counterfeit

Textbooks to Chegg.  To circumvent Chegg's policies that put a cap on the number of books that

it will buy from any individual seller, Defendants created hundreds of such fictitious accounts.

Defendants also evade detection by selling new books as "used."

27.     In connection with these fictitious accounts, Defendants hold themselves out as

persons or businesses located throughout the United States, including in New York.  Defendants

have used New York addresses, among others, as their shipping addresses, and shipping records indicate that the books all shipped from a single geographic area in New York.  When accessing Chegg's website to sell the Counterfeit Textbooks to Chegg, Defendants' IP addresses indicate Defendants made numerous sales while located in India, as well as while located in New York. While much of Defendants' account information is fictitious, Defendants nevertheless provided Chegg with real email addresses in order to receive payment through PayPal for their sales of the Counterfeit Textbooks.

28.     Defendants' underhanded activities, as described above, demonstrate that Defendants knew that the Counterfeit Books they sold to Chegg, and others, were infringing. Defendants knew that neither they nor their suppliers are authorized to reproduce Plaintiffs' Authentic Works or use Plaintiffs' Marks on textbooks or to distribute the Counterfeit Books, yet nonetheless willfully distributed such Counterfeit Textbooks.

29.     The Counterfeit Books that Defendants sold to Chegg as described above, and potentially others as well, are inferior to Plaintiffs' Authentic Works.  Among other differences, the binding, glue, paper, color and printing are often different and inferior.  Based on the use of Plaintiffs' trademarks, actual and prospective purchasers are likely to believe that the Counterfeit Textbooks are Plaintiffs' Authentic Works.  Because the Counterfeit Textbooks are inferior, this weakens, blurs, and tarnishes Plaintiffs' Marks.  It further injures Plaintiffs' business reputations by causing Plaintiffs' Marks and the goodwill associated with them to be confused or mistakenly associated with a group or series of textbooks of lesser quality.

## FIRST CLAIM
## DIRECT AND SECONDARY COPYRIGHT INFRINGEMENT
### (In Violation of 17 U.S.C. § 106)

30.     Plaintiffs re-allege and incorporate as if fully set forth herein the allegations set

forth in the paragraphs above.

31.     Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act and Plaintiffs or their affiliates have obtained registrations duly issued by the U.S. Copyright Office protecting their respective copyrights in Plaintiffs' Authentic Works.

32.     At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

33.     Beginning on an unknown date but no later than the summer of 2016 and continuing to the present, Defendants, with knowledge of Plaintiffs' duly registered copyrights in the Authentic Works, infringed Plaintiffs' copyrights.  Defendants did more than supply the means to facilitate the infringement of Plaintiffs' copyrights; they substantially participated in and orchestrated such infringing activities.

34.     Defendants infringed the copyrighted Authentic Works by, among other things, distributing and selling the Counterfeit Textbooks, without the permission, license, or consent of Plaintiffs, in violation of Plaintiffs' exclusive rights to reproduce and/or distribute their works pursuant to 17 U.S.C. § 106.  Accordingly, Defendants are liable for direct copyright infringement.

35.     Defendants also knowingly engaged in, supervised, and/or controlled the distribution and sale, and possible importation, of the Counterfeit Textbooks, and had a direct financial interest in, and stood to gain a direct financial benefit from their deliberately infringing activity.  By engaging in the illegal conduct alleged above, in addition to directly organizing and

effectuating such infringing activities, Defendants personally induced, caused, and materially contributed to infringing conduct by others, including resellers to whom Defendants sold the Counterfeit Textbooks for further distribution.  Accordingly, Defendants are liable for contributory and vicarious copyright infringement.

36.      Defendants' wrongful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.

37.      Defendants' wrongful acts will continue unless enjoined by this Court.

38.      Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiffs.  Plaintiffs have no adequate remedy at law and have been, and will continue to be, damaged in an amount not yet determined.

**SECOND CLAIM**
**TRADEMARK COUNTERFEITING AND INFRINGEMENT**
**(In Violation of 15 U.S.C. § 1114(1)(a))**

39.      Plaintiffs re-allege and incorporate as if fully set forth herein the allegations contained in the paragraphs above.

40.      Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant, any registered trademark or any reproduction, counterfeit, copy, or colorable imitation thereof in connection with the sale, offering for sale, distribution, or advertising of goods or services on which such use is likely to result in confusion, mistake, or deception.

41.      Defendants have used in commerce spurious designations that are identical to, or substantially indistinguishable from, Plaintiffs' Marks on goods for which Plaintiffs hold federal trademark registrations.  Defendants, without the consent or authorization of Plaintiffs, have used these spurious designations in connection with the manufacturing, advertising, sale, offering for

sale, and/or distribution of goods for their own financial gain.

42.     Defendants use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' Marks in conjunction with the Counterfeit Textbooks is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Textbooks, and is likely to deceive the public into believing the Counterfeit Textbooks being sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiffs, all to the damage and detriment of Plaintiffs' reputation, goodwill, and sales.

43.     Defendants engaged in these wrongful activities while having notice and knowledge of (i) Plaintiffs' well-known and prior rights in Plaintiffs' Marks, (ii) the fact that Defendants' Counterfeit Textbooks bear marks which are intentionally confusingly similar to Plaintiffs' Marks, and (iii) that such use of Plaintiffs' Marks was not authorized or licensed by Plaintiffs.

44.     Defendants' acts as described in this Complaint constitute trademark counterfeiting and/or infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(a)(1).

45.     Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.

46.     Defendants' wrongful acts will continue unless enjoined by this Court.

47.     Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiffs.   Plaintiffs have no adequate remedy at law and have been, and will continue to be, damaged in an amount not yet determined.

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.      For judgment on each of the claims set forth above, including that Defendants' infringement of Plaintiffs' copyrights and trademarks was intentional and willful.

2.      An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Counterfeit Textbooks with documents relating to all of the purchases and sales.

3.      Pursuant to 17 U.S.C. § 502, an order enjoining Defendants from further infringing upon Plaintiffs' respective copyrights.  Without limiting the foregoing, or any other relief the Court may deem appropriate, Plaintiffs request that Defendants, their officers, agents, servants, employees, and all persons in active concert with them, be temporarily, preliminarily and permanently enjoined from:

      a.   Reproducing, distributing, displaying, or importing any unauthorized copies of any of Plaintiffs' copyrighted works;

      b.   Encouraging, assisting, or inducing anyone else to reproduce, distribute, display, or import any unauthorized copies of any of Plaintiffs' copyrighted works or financially benefitting from the same; and

      c.   Shipping, delivering, holding for sale, selling, returning, transferring, or otherwise disposing of in any manner any unauthorized copies of any of Plaintiffs' copyrighted works.

4.      Pursuant to 15 U.S.C. § 1116, an order enjoining Defendants from further counterfeiting, or otherwise infringing upon, Plaintiffs' respective trademarks.  Without limiting the foregoing, or any other relief the Court may deem appropriate, Plaintiffs request that Defendants, their officers, agents, servants, employees, and all persons in active concert with them, be temporarily, preliminarily and permanently enjoined from:

    a.   Using Plaintiffs' trademarks or any reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' trademarks in connection with the distribution, advertising, offer for sale, and/or sale of merchandise that are not the genuine products of Plaintiffs;

    b.   Passing off, inducing, or enabling others to sell or pass off any counterfeit books as Plaintiffs' genuine product; and

    c.   Shipping, delivering, holding for sale, selling, distributing, returning, transferring, or otherwise disposing of in any manner any books or other items falsely bearing Plaintiffs' trademarks, or any reproduction, counterfeit, copy, or colorable imitation of the same.

5.      Pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118, an order requiring Defendants to deliver up for destruction all products, packaging, labels, literature, advertising, and other material bearing imitations or reproductions, including confusingly similar variations, of Plaintiffs' respective copyrights and marks.

6.      Pursuant to 17 U.S.C. § 504, an order requiring Defendants to pay to Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts of copyright infringement as alleged above, including actual damages or statutory damages at Plaintiffs' election.

7.      Pursuant to 15 U.S.C. § 1117(a) or (b), an order requiring Defendants to pay to Plaintiffs up to the trebled amount of such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts of trademark counterfeiting and infringement as alleged above and all profits that Defendants have derived while using counterfeits or infringements of Plaintiffs' Marks; or, in the alternative, pursuant to 15 U.S.C. § 1117(c), statutory damages of up to $2,000,000 for each trademark that Defendants have counterfeited or infringed.

8.      For an award of attorney's fees and costs pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a).

9.      For pre-judgment and post-judgment interest at the applicable rate; and

10.    For such other and further relief the Court deems proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury

of all issues that are so triable.

DATED:  November 1, 2016                    Respectfully submitted,

By:   *Kerry M. Mustico*

Matthew Jan Oppenheim
Kerry M. Mustico (N.Y. Bar No. 4190534)
Oppenheim + Zebrak, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
(202) 480-2999 Telephone
(866) 766-1678 Facsimile
matt@oandzlaw.com
kerry@oandzlaw.com

*Counsel for Plaintiffs Pearson Education,
Inc. and McGraw-Hill Global Education
Holdings, LLC*