JUDGE PAULEY

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC and PEARSON EDUCATION, INC., | **16 CV 8530** |
| Plaintiffs, | Case No. _____ |
| v. | |
| DOES 1 - 10, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
***EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER,**
**EXPEDITED DISCOVERY ORDER, ORDER AUTHORIZING ALTERNATIVE**
<u>**SERVICE, AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................ 3

ARGUMENT .................................................................................................... 5

I.     THIS COURT HAS PERSONAL JURISDICTION ................................... 5

II.    DEFENDANTS MEET THE STANDARD FOR A TEMPORARY
       RESTRAINING ORDER AND PRELIMINARY INJUNCTION............... 8

       A.  Plaintiffs are Likely to Succeed on All of Their Claims Against Defendants ......... 9

       B.  Plaintiffs Will Suffer Irreparable Harm if the Court Does Not Grant
           Immediate Relief........................................................................... 13

       C.  Plaintiffs Satisfy the Remaining Two Equitable Factors ....................... 14

III.   PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE
       TRANSFER OF DEFENDANTS' ASSETS .............................................. 14

       A.  The Court Possesses Ample Authority Under the Federal Rules and Its
           Inherent Equitable Powers to Attach Defendants' Assets ..................... 14

       B.  The Court Also Possesses Authority Under New York Law to Attach the
           Defendants' Assets....................................................................... 18

       C.  *Ex Parte* Relief Is Warranted ....................................................... 21

       D.  The Court Should Require No Bond or, in the Alternative, a Minimal Bond ....... 21

IV.    PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY ............ 22

       A.  Legal Standard ............................................................................ 22

       B.  Plaintiffs Satisfy the Factors for Good Cause..................................... 24

V.     PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING SERVICE
       OF PROCESS BY EMAIL ON DEFENDANTS...................................... 25

i

**TABLE OF CONTENTS**
(Continued)

A. New York C.P.L.R. § 308 Authorizes Alternate Service on Individuals in United States .................................................................................................26

B. Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternate Service on Individuals in a Foreign Country ......................................................................27

    1. Service of Process by Email is Not Prohibited by International Agreement ...................................................................................................28

    2. Service of Process is Reasonably Calculated to Provide Notice to Defendants .................................................................................................29

CONCLUSION .....................................................................................................................30

# TABLE OF AUTHORITIES

## <u>CASES</u>

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th. Cir. 2001)............................................10

*Adelphia Comm'ns Corp. v. Rigas*, No. 02 Civ. 8495 (GBD), 2003 WL 21297258, 2003 U.S. Dist. LEXIS 9349 (S.D.N.Y. June 4, 2003)....................................................16

*Admarketplace, Inc. v. Tee Support, Inc.,* No. 13 Civ. 5635 (LGS), 2013 WL 4838854, 2013 U.S. Dist. LEXIS 129749 (S.D.N.Y. Sept. 11, 2013)............................................23

*Algonquin Power Corp., Inc. v. Trafalgar Power Inc.,* No. 5:00-CV-1246 (NPM/DEP), 2000 WL 33963085, 2000 U.S. Dist. LEXIS 20331 (N.D.N.Y. Nov. 8, 2000) .........................17

*Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010) ................................................10, 23, 25

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) ................................................20, 22

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990) ...............................5

*Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841 (RWS), 1997 WL 639037, 1997 U.S. Dist. LEXIS 15957 (S.D.N.Y. Oct. 14, 1997) ............................................23

*Bloomberg, L.P. v. Doe*, No. 13 Civ. 01787 (LGS), 2013 WL 4780036, 2013 U.S. Dist. LEXIS 130034 (S.D.N.Y. June 26, 2013)....................................................23, 25

*Brenntag Int'l Chems., Inc. v. Bank of India,* 175 F.3d 245 (2d Cir. 1999) ................................16

*Broad. Music, Inc. v. PAMDH Enters., Inc.*, No. 13 Civ. 2255 (KMW), 2014 WL 2781846, 2014 U.S. Dist. LEXIS 84409 (S.D.N.Y. June 19, 2014)............................................13

*Broadfoot v. Diaz*, 245 B.R. 713 (Bankr. N.D. Ga. 2000)....................................................29, 30

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30 (2d Cir. 2010)......................................................................................................9

*Coach, Inc. v. Chaos of Muncie*, No. 1:11-cv-0505-JMS-DML, 2012 WL 896420, 2012 U.S. Dist. LEXIS 35062 (S.D. Ind. Mar. 15, 2012)....................................................... 11-12

*Complex Sys., Inc. v. ABN Amro Bank N.V.,* No. 08 Civ. 7497 (KBF), 2014 WL 1883474, 2014 U.S. Dist. LEXIS 64467 (S.D.N.Y. May 9, 2014)....................................................13

*Considar, Inc. v. Redi Corp., Establishment*, 238 A.D.2d 111, 111, 655 N.Y.S.2d 40 (N.Y. App. Div. 1997). ......................................................................................19

# TABLE OF AUTHORITIES
(Continued)

## CASES

*Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F. Supp. 96 (S.D.N.Y. 1989) ..........11

*Datatech Enters. LLC v. FF Magnat Ltd.*, No. C 12-04500 CRB, 2012 WL 4068624, 2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sept. 14, 2012) ........................................16

*De Beers Consol. Mines v. United States*, 325 U.S. 212 (1945)...................................16

*DeWitt Stern Group, Inc. v. Eisenberg,* Case No. 13 Civ. 3060 (RWS), 2013 WL 2420835, 2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 4, 2013)...............................................22

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006).........................................8

*Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012)........................22

*Doctor's Assocs. v. Distajo*, 107 F.3d 126 (2d Cir. 1997)..........................................21

*Doctor's Assocs. v. Stuart*, 85 F.3d 975 (2d Cir. 1996)...........................................22

*Elcometer, Inc. v. TQC-USA, Inc.,* No. 12-cv-14628, 2013 WL 592660, 2013 U.S. Dist. LEXIS 19874 (E.D. Mich. Feb. 14, 2013) ........................................30

*Elsevier, Inc. v. Does 1-10*, No. 16 Civ. 1245 (RA), Ex Parte Order (S.D.N.Y. Feb. 2, 2016) (Dkt. No. 13) ................................................. 17-18

*Experience Hendrix, LLC v. Chalpin,* 461 F. Supp. 2d 165 (S.D.N.Y. 2006)............................17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ...................................9

*Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.*, No. CV-08-384, 2009 WL 412126, 2009 U.S. Dist. LEXIS 13369 (E.D.N.Y. Feb. 17, 2009)...................................7

*FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013) .................................27, 28, 29

*Gaffigan v. Doe*, 689 F. Supp. 2d 1332, 1342 (S.D. Fla. 2009)....................................30

*Gordon v. Long Bay (1980) Ltd.*, No. 94 Civ. 2141 (SHS), 1995 WL 489474, 1995 U.S. Dist. LEXIS 11721 (S.D.N.Y. Aug. 15, 1995) ......................................................6

*Graubard Mollen Dannett & Horowitz v. Kostantinides*, 709 F. Supp. 428 (S.D.N.Y. 1989)..............................................................20

## TABLE OF AUTHORITIES
(Continued)

**<u>CASES</u>**

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999).............16

*Gucci Am., Inc. v. Bank of China,* 768 F.3d 122 (2d Cir. 2014)....................................16

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284 (S.D.N.Y. 2003) ...................12

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985) ...........................6

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.,* 826 F. Supp. 2d 619 (S.D.N.Y. 2011) .......13

*In re Comverse Tech., Inc.*, No. 06-CV-1849 (NGG) (RER), 2006 WL 2568461,
2006 U.S. Dist. LEXIS 62227 (E.D.N.Y. Aug. 31, 2006)............................................16

*In re Feit & Drexler, Inc.,* 760 F.2d 406 (2d Cir. 1985)....................................15

*Ingraham v. Carroll*, 687 N.E.2d 1293 (N.Y. 1997) ........................................8

*ITC Entm't, Ltd. v. Nelson Film Partners,* 714 F.2d 217 (2d Cir. 1983)....................................20

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)....................................5

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
306 F. Supp. 2d 482 (S.D.N.Y. 2004).......................................................20

*Klauber Bros. v. Russell-Newman, Inc.*, No. 11 Civ. 4985 (PGG), 2013 WL 1245456,
2013 U.S. Dist. LEXIS 42758 (S.D.N.Y. Mar. 26, 2013) ...........................................11

*Libancell S.A.L. v. Republic of Leb.*, No. 06 Civ. 2765 (HB), 2006 WL 1321328,
2006 U.S. Dist. LEXIS 29442 (S.D.N.Y. May 16, 2006).........................................21

*Lions Gate Films, Inc. v. Doe*, No. 2:14-cv-6033-MMM-AGRx, 2014 WL 3895240,
2014 U.S. Dist. LEXIS 110032 (C.D. Cal. Aug. 18, 2014).......................................15

*Living Scriptures, Inc. v. Doe*, No. 1:10 cv 0182 DB, 2010 WL 4687679,
2010 U.S. Dist. LEXIS 119968 (D. Utah Nov. 10, 2010) .........................................23

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106 (S.D.N.Y. 2010) .....27

*Malibu Media, LLC v. Doe,* No. 12 Civ. 2950 (JPO), 2012 WL 2001968, 2012 U.S.
Dist. LEXIS 77469 (S.D.N.Y. June 1, 2012).................................................23

# TABLE OF AUTHORITIES
(Continued)

## CASES

*Mason Tenders Dist. Council Pension Fund v. Messera,* No. 95 Civ. 9341 (RWS),
1997 WL 223077, 1997 U.S. Dist. LEXIS 5931 (S.D.N.Y. May 1, 1997) ...................................15

*McCluskey v. Belford High Sch.*, No. 2:09-14345, 2010 WL 2696599,
2010 U.S. Dist. LEXIS 62608 (E.D. Mich. June 24, 2010)................................................... 29-30

*McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252 (S.D.N.Y. 2005)...........7

*Microsoft Corp. v. Doe*, No. 12-CV-1335 (SJ) (RLM), 2012 U.S. Dist. LEXIS 162122
(E.D.N.Y. Nov. 13, 2012)......................................................................................................30

*Microsoft Corp. v. Jun Yan*, No. 3:10-cv-00162 (VLB), 2010 U.S. Dist. LEXIS 14934
(D. Conn. Feb. 18, 2010) ......................................................................................................17

*Motorola, Inc. v. Abeckaser,* No. 07-CV-3963 (CPS) (SMG), 2009 WL 1362833,
2009 U.S. Dist. LEXIS 40660 (E.D.N.Y. May 14, 2009) ......................................................16, 17

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497 (2d Cir. 2011) .......................................7

*Philips Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891 (HB), 2004 WL 1375277,
2004 U.S. Dist. LEXIS 11154 (S.D.N.Y. June 18, 2004)............................................................12

*Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412,
2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 13, 2007) .................................................27, 28, 29

*Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 WL 1050307,
2010 U.S. Dist. LEXIS 26536 (S.D.N.Y. Mar. 22, 2010) .....................................................28, 29

*Pure Power Boot Camp v. Warrior Fitness Boot Camp, LLC*, 587 F. Supp. 2d 548
(S.D.N.Y. 2008)......................................................................................................................15

*Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Va.*,
144 F. Supp. 2d 241 (S.D.N.Y. 2001)..........................................................................15, 16, 18

*Republic of Philippines v. Marcos,* 806 F.2d 344 (2d Cir. 1986) ..................................................15

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) .........................27, 28

*Rogers v. eColor Studio*, No. 11-CV-4493 (ARR) (RER), 2013 WL 752256,
2013 U.S. Dist. LEXIS 28332 (E.D.N.Y. Feb. 7, 2013).................................................................7

**TABLE OF AUTHORITIES**
(Continued)

<u>**CASES**</u>

*RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLC), 2007 WL 1515068,
2007 U.S. Dist. LEXIS 37713 (S.D.N.Y. May 24, 2007)............................................................27

*Safadjou v. Mohammadi*, 964 N.Y.S.2d 801 (N.Y. App. Div. 2013) .....................................26, 27

*Salinger v. Colting,* 607 F.3d 68 (2d Cir. 2010) ...............................................................9, 13

*Sea Carriers Corp. v. Empire Programs, Inc.,* No. 04 Civ. 7395 (RWS), 2006 WL
3354139, 2006 U.S. Dist. LEXIS 83843 (S.D.N.Y. Nov. 20, 2006)..........................................16

*Serio v. Black, Davis & Shue Agency, Inc.,*  No. 05 Civ. 15 (MHD), 2005 WL 3642217,
2005 U.S. Dist. LEXIS 39018 (S.D.N.Y. Dec. 30, 2005) .............................................................18

*Signal Capital Corp. v. Frank,* 895 F. Supp. 62 (S.D.N.Y.1995)...............................................17

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206
(S.D.N.Y. 2009)..............................................................................................................................10

*Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004)..................23-24, 25

*Stern v. Cosby*, 246 F.R.D. 453 (S.D.N.Y. 2007) .................................................................22-23

*Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1998) .........................................11

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) .........................................................11

*Topps Co. v. Gerrit J. Verburg Co.*, No. 96 Civ. 7302 (RWS),
1996 U.S. Dist. LEXIS 18556 (S.D.N.Y. Dec. 13, 1996) .............................................................12

*U2 Home Entm't, Inc. v. Bowery Music City, Inc.,* No. 03 Civ. 8909 (RJH),
2003 WL 22889738, 2003 U.S. Dist. LEXIS 21992 (S.D.N.Y. Dec. 8, 2003) ............................21

*United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 116 (D.D.C. 2013) ..........27

*Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141 (2d Cir. 2003) ..........................................................9

*Williams v. Adver. Sex LLC*, 231 F.R.D. 483 (N.D. W. Va. 2005)........................................29, 30

*WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594 (S.D.N.Y. 2011) .....................................................14

## TABLE OF AUTHORITIES
(Continued)

### CASES

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012) ..................................................................14

### STATUTES

15 U.S.C. § 1065 ........................................................................................................................12

15 U.S.C. § 1114 ........................................................................................................................11

15 U.S.C. § 1115 ........................................................................................................................22

15 U.S.C. § 1117 ........................................................................................................................29

17 U.S.C. § 101 ..........................................................................................................................10

17 U.S.C. § 102 ..........................................................................................................................10

17 U.S.C. § 106 ..........................................................................................................................10

17 U.S.C. § 408 ..........................................................................................................................10

17 U.S.C. § 410 ..........................................................................................................................10

17 U.S.C. § 411 ..........................................................................................................................10

17 U.S.C. § 501 ............................................................................................................................9

17 U.S.C. § 502 ............................................................................................................................8

17 U.S.C. § 504 ....................................................................................................................15, 19

### RULES

Fed. R. Civ. P. 4 ....................................................................................................................26-30

Fed. R. Civ. P. 26 ......................................................................................................................22

Fed. R. Civ. P. 64 ......................................................................................................................18

Fed. R. Civ. P. 65 ...............................................................................................................8, 15, 21

**TABLE OF AUTHORITIES**
(Continued)

## **RULES**

N.Y. C.P.L.R. § 308.................................................................................................26

N.Y. C.P.L.R. § 6201........................................................................................19, 20

N.Y. C.P.L.R. § 6210.................................................................................................21

N.Y. C.P.L.R. § 6212.................................................................................................19

## **OTHER AUTHORITIES**

2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16 (2008)...........................11

Hague Convention Art. 1, Nov. 15, 1965, 20 U.S.T. 361............................................28

McGraw-Hill Global Education Holdings, LLC ("MHE") and Pearson Education, Inc. ("Pearson") (collectively, "Plaintiffs"), by and through their undersigned attorneys, respectfully submit this Memorandum of Law in support of their *Ex Parte* Application for Temporary Restraining Order, Expedited Discovery Order, Order Authorizing Alternate Service, and Order to Show Cause for Preliminary Injunction ("Motion").  The Motion is also supported by the Declarations of Matthew J. Oppenheim ("Oppenheim Decl.") and Plaintiffs' representatives Steven Rosenthal (MHE) and Diane Peirano (Pearson) (collectively, "Pls.' Decl.").

## PRELIMINARY STATEMENT

This is a case brought by two of the nation's largest and most respected publishing houses to address egregious violations of their rights under federal copyright and trademark laws. The Defendants, whose true identities are currently unknown to Plaintiffs, operate a wholly illegal business that either manufactures, has manufactured, or purchases counterfeit copies of educational textbooks that Plaintiffs publish, and distributes and sells the counterfeits on a large-scale basis, injecting them into the marketplace.

Plaintiffs just recently learned of Defendants' unlawful activities as a result of a third-party national book distributor, MBS Textbook Exchange, Inc. ("MBS"), receiving from another third-party national book distributor, Chegg, Inc. ("Chegg"), bulk quantities (over 2,200 copies) of what purported to be the following textbooks: (a) *Supply Chain Management, 6th edition*, by Chopra (Pearson); (b) *Global Marketing, 9th edition*, by Keegan (Pearson); (c) *Essentials of Investments, 10th edition,* by Bodie (MHE); and (d) *Essentials of Economics, 10th edition*, by Schiller (MHE) (collectively, the "Counterfeit Textbooks").  *See* Compl. Ex. A; Pls.' Decls.¶ 7.

1

Plaintiffs traveled to MBS in Missouri last week to inspect these books and determined that they are, indeed, counterfeit.

These four counterfeit titles, in all likelihood, are just the tip of the iceberg. Based on the bulk nature of the sales that Plaintiffs know about, and the efforts Defendants have made to conceal their true identities (including the creation of some 170 false individual identities to sell the Counterfeit Textbooks, when Defendants actually operate as a single or coordinated enterprise), it is highly probable that Defendants have infringed Plaintiffs' intellectual property rights more pervasively. Given the nature of Defendants' illegal activity, Plaintiffs also have every reason to believe that (a) Defendants will continue to infringe if they are not temporarily restrained and ultimately preliminarily enjoined from doing so by the Court, and (b) Defendants will dissipate or move any assets they have, and that could be used to satisfy or partially satisfy a judgment, if the Court does not restrain them from doing so.

To determine Defendants' true identities and locations, Plaintiffs require expedited discovery targeted at obtaining such identifying information. Even though Defendants provided contact information when they sold the Counterfeit Textbooks to Chegg, the names and addresses provided appear to be fictitious. Further, from the contact and shipping information, it is clear that the sellers are not 170 individuals, but rather a few sellers (or even a single seller) working as part of a coordinated operation.

Accordingly, by this Motion, Plaintiffs request: (1) an order temporarily enjoining any further infringement and restraining the assets in the accounts used by Defendants to receive funds or payments in connection with their illegal scheme; (2) leave to serve targeted expedited discovery; (3) an order authorizing service of the Complaint and future filings upon Defendants by email; and (4) an order to show cause why a preliminary injunction should not issue

prohibiting Defendants from continuing to infringe and restraining Defendants' assets until this case has been resolved.

## STATEMENT OF FACTS

Plaintiffs are world-renowned publishers of educational books and multimedia materials in all subject areas and grade levels, operating and publishing under many distinguished and well-known imprints, with a rich educational and literary heritage.  Compl. ¶¶ 11-12; Pls.' Decls. ¶ 3.  Plaintiffs' textbooks, which they develop, market, distribute, license, and sell to professionals, students, and others, are among the most popular and widely used titles in their fields – as are the four known titles that Defendants counterfeited, set forth on Exhibits A and B to the Complaint ("Plaintiffs Authentic Works").  Compl. ¶¶ 2, 4; Pls.' Decls. ¶ 4.

Plaintiffs are the copyright owners of, and/or the owners of the exclusive rights under copyright in, Plaintiffs' Authentic Works, and Plaintiffs or their affiliates have obtained registrations duly issued by the U.S. Copyright Office protecting their respective copyrights therein.  Pls.' Decls. ¶ 3; *see also* Compl. Ex. A.  Plaintiffs' Authentic Works also bear trademarks and service marks ("Plaintiffs' Marks"), which Plaintiffs own or are the exclusive licensee of, and which Plaintiffs or their affiliates have duly registered on the Principal Registrar of the United States Patent and Trademark Office.  Pls.' Decls. ¶ 4; *see also* Compl. Ex. B.

As alleged in the Complaint, Defendants have advertised, offered for sale, sold, and/or distributed wholly unauthorized copies of Plaintiffs' Authentic Works, bearing Plaintiffs' Marks, and have done so knowingly and willfully.  Compl. ¶¶ 21-23, 30; Pls.' Decls. ¶ 8.  Plaintiffs suffer serious injury when their copyrights and trademarks are infringed.  Compl. ¶ 20.  Among other forms of harm, the sale of counterfeit copies of Plaintiffs' textbooks displaces legitimate sales, depriving Plaintiffs of sales income, which represents a substantial portion of their

respective annual revenues. *Id.* ¶¶ 18, 20.  The unauthorized use of Plaintiffs' Marks on counterfeit (and inferior) product also diminishes the goodwill and reputation for the highest quality associated with them, which is of tremendous value to Plaintiffs. *Id.* ¶¶ 17, 19, 31.

Despite Defendants' efforts at concealment, Plaintiffs discovered Defendants' counterfeiting activity through information provided by third-party textbook distributors, MBS and Chegg. *Id.* ¶¶ 25-27; Pls.' Decls. ¶¶ 6-7.  MBS informed Plaintiffs that it had purchased hundreds of copies of each title at issue from Chegg (and the books also bear "Chegg" stickers) and, upon inspection, believed the books to be counterfeit. *Id.*  Plaintiffs immediately inspected the books, and applying their experience and knowledge of legitimate books, confirmed that the books are indeed counterfeit.  Compl. ¶ 25; Pls.' Decls. ¶ 6.

In addition to conducting the inspection, Plaintiffs immediately contacted Chegg to gain more information about these transactions.  Compl. ¶ 27.  Chegg explained that it acquired the books through its automated purchasing system, which allows students to sell back their textbooks for cash. *Id.*  Chegg provided Plaintiffs with the contact information provided by Defendants, the seller(s) of the counterfeits, including name, email address, and physical address. Oppenheim Decl. ¶ 7.  Using fictitious names and addresses,[1] Defendants created some 170 different accounts in Chegg's system.  Defendants did so in order to circumvent a cap imposed by Chegg on the number of books that could be sold through its system, and to sell counterfeits in a piecemeal fashion, while attempting to avoid detection.  Compl. ¶ 26, Oppenheim Decl. ¶ 8. Defendants also falsely represented that they were selling used books rather than the new Counterfeit Textbooks they actually sold, again in order to evade detection and exploit Chegg's system.  Compl. ¶ 26.  Additionally, the shipping records from United Parcel Service ("UPS")

---

[1] Defendants used various permutations of many of the same first and last names and email addresses that follow a fabricated pattern. *See* Oppenheim Decl. ¶ 8, Ex. 1.

associated with the Counterfeit Textbooks shows that the books all shipped from a single geographic area in New York in contrast to the many different addresses throughout the United States that Defendants provided to Chegg to register accounts. Compl. ¶ 28; Oppenheim Decl. ¶ 10.  Similarly, information from Chegg identifying Defendants' Internet Protocol ("IP") addresses used to access Chegg's website to sell the Counterfeit Textbooks to Chegg, indicate that Defendants made numerous sales while located in India, as well as while located in New York.  Compl. ¶ 27; Oppenheim Decl. ¶ 10.

While much of Defendants' account information is fictitious, Defendants nevertheless provided Chegg with real email addresses in order to receive payment through PayPal for their sales of the counterfeits.  Compl. ¶ 27; Oppenheim Decl. ¶ 9.  In creating the email addresses, Defendants used consecutive names and numbers, such as "epicsale1@gmail.com," epicsale2@gmail.com, and so on, inserting additional numbers.  Oppenheim Decl. ¶ 8.

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION

Prior to discovery, a plaintiff need only allege facts sufficient to create a *prima facie* showing of jurisdiction.  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("'[P]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction.") (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990)); *see also Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d at 196 ("In *Hoffritz*, we said that though a plaintiff bears the burden of establishing jurisdiction over the defendant by a preponderance of the evidence, the plaintiff need make only a *prima facie* showing that jurisdiction exists prior to the holding of an

5

evidentiary hearing."); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985)

("Until an evidentiary hearing is held, however, the plaintiff need make only a prima facie

showing that jurisdiction exists . . . .").

New York's long-arm statute is satisfied here on multiple grounds, including § 302(a)(1)

of the New York Civil Practice Law and Rules ("CPLR"), which provides:

> As to a cause of action arising from any of the acts enumerated in this section, a
> court may exercise personal jurisdiction over any non-domiciliary, or his executor or
> administrator, who in person or through an agent:
>
> (1) transacts any business within the state or contracts anywhere to supply goods or
> services in the state . . . .

CPLR § 302(a)(1).

Although Plaintiffs do not know the true identities and locations of Defendants,

information from Chegg and United Parcel Service revealed that Defendants shipped the

Counterfeit Textbooks from a shipping location in New York.  Compl. ¶ 27; Oppenheim Decl. ¶

10.  In addition, Defendants' IP addresses indicate that Defendants made at least some of the

sales of the Counterfeit Textbooks while located in New York.  *Id.*  Thus, Defendants transacted

business (with Chegg and UPS) in New York, and it is that very activity on which Plaintiffs'

infringement claims are based.

In addition, of the addresses supplied by Defendants to Chegg, at least 30 of them are

New York addresses.  Thus, in order to create a Chegg account, through which they sold

Counterfeit Textbooks, Defendants identified and linked to their Chegg accounts New York-

based addresses.  Compl. ¶ 27; *cf. Gordon v. Long Bay (1980) Ltd.*, No. 94 Civ. 2141 (SHS),

1995 WL 489474, 1995 U.S. Dist. LEXIS 11721, at *4-5 (S.D.N.Y. Aug. 15, 1995) (finding a

defendant's solicitation in New York combined with defendant's holding itself out as operating

in New York sufficient to confer jurisdiction under § 301).

6

To the extent Defendants are not located in New York, personal jurisdiction exists under CPLR § 302(a)(3).  Section 302(a)(3) allows for specific personal jurisdiction over someone who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

Here, as Plaintiffs allege, Defendants committed copyright and trademark infringement, which are commercial torts.  *See Rogers v. eColor Studio*, No. 11-CV-4493, 2013 WL 752256, 2013 U.S. Dist. LEXIS 28332, at *6 (E.D.N.Y. Feb. 7, 2013), *adopted by* 2013 U.S. Dist. LEXIS 27029 (E.D.N.Y. Feb. 27, 2013); *McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) (describing copyright and trademark infringement as torts).  Even if Defendants are not located in New York themselves, the situs of Plaintiffs' injury is New York, where they have their principal places of business.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 501 (2d Cir. 2011) (holding that where a New York corporation's copyrights are infringed, in that case via the Internet, the situs of the corporation's injury is New York).  As a result, Defendants should have reasonably expected their piracy operation to have consequences in New York.  *See McGraw-Hill Cos., Inc.*, 375 F. Supp. 2d at 256 ("It is reasonably foreseeable that the provision of materials that infringe the copyrights and trademarks of a New York company will have consequences in New York . . . ."); *Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.*, No. CV-08-384, 2009 WL 412126, 2009 U.S. Dist. LEXIS 13369, at *35 (E.D.N.Y. Feb. 17, 2009).  In addition, Defendants operated their illegal scheme on a nationwide basis, targeting at least one national book distributor, and deriving substantial revenue from interstate commerce.  *See* Compl. ¶¶ 3, 24-29.  Accordingly, the Court has personal jurisdiction over Defendants under CPLR § 302(a)(3).

7

A separate due process analysis is unnecessary here.  New York's long-arm statute does not extend to the limit of due process.  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements."); *Ingraham v. Carroll*, 687 N.E.2d 1293, 1295 (N.Y. 1997) ("The subdivision 302(a)(3) was not designed to go to the full limits of permissible jurisdiction.  The limitations contained in subparagraphs (i) and (ii) were deliberately inserted to keep the provision well within constitutional bounds." (internal quotations and citations omitted)).  Nonetheless, the requisite minimum contacts in a due process analysis are clearly satisfied under the circumstances of this case such that asserting personal jurisdiction here does not offend traditional notions of fair play and substantial justice.  Defendants infringed the registered copyrights of New York-based Plaintiffs, causing them injury in New York.  Compl. ¶¶ 6, 8-9. They also hold themselves out as operating their business out of New York in order to sell Counterfeit Textbooks to a national book distributor, with the intention of injecting the counterfeits into the consumer stream nationwide, including in New York.  *See* Compl. ¶¶ 3, 6, 24-29.

## II.   DEFENDANTS MEET THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

This Court has the authority to issue temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a); *cf.* Fed. R. Civ. P. 65.  Both temporary restraining orders and preliminary injunctions require Plaintiffs to establish: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation"; (2) that they are "likely to suffer irreparable injury in the absence of an injunction"; (3) "the balance of hardships tips in [their] favor" ("decidedly" so where there are "serious questions going to the merits");

and (4) the "'public interest would not be disserved' by the issuance of a preliminary injunction."
*Salinger v. Colting,* 607 F.3d 68, 74, 79-80 (2d Cir. 2010) (citations omitted); *see also Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 145 (2d Cir. 2003).  The "'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010).  In this case, the Court should grant the requested relief because Plaintiffs can demonstrate each of the above elements.

### A.    Plaintiffs Are Likely to Succeed on All of Their Claims Against Defendants.

There is no question that Defendants are infringing on Plaintiffs' copyrights.  Defendants brazenly sold the Counterfeit Textbooks, in bulk, to Chegg.  Further they have crafted an elaborate scheme to hide their true identities.  For instance, the contact information that Defendants provided apparently consists of 170 different accounts in the automated purchasing system used by Chegg, even though the Counterfeit Textbooks shipped from a single geographic area.  Compl. ¶¶ 25-28; Oppenheim Decl. ¶¶ 8-10, Ex. 1.  In so doing, Defendants also intentionally circumvented Chegg's policies that limit the number of books that any individual seller can sell.  Compl. ¶ 27; *cf.* Oppenheim Decl. ¶ 8.

The Copyright Act provides, "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ."  17 U.S.C. § 501.  To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991).  The word "copying" means an infringement of any of the copyright holder's exclusive rights in its original work, including the reproduction and distribution rights.

9

*Arista Records LLC v. Doe*, 604 F.3d 110, 117 (2d Cir. 2010) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th. Cir. 2001)); 17 U.S.C. § 106.

Plaintiffs satisfied the registration requirements before commencing this case.[2]  Plaintiffs have obtained copyright registrations of Plaintiffs' Authentic Works.  While MHE has not yet registered the most recent editions published in 2016, Plaintiffs rely upon their copyright registrations for the prior editions of these textbooks.  *See* Compl. Ex. A.  Plaintiffs can do so because their unregistered recent editions are derivative works of the registered editions.

A "derivative work" is defined in the Copyright Act as "a work based upon one or more preexisting works . . . . [including a] work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101.  The owner of a derivative work may maintain a copyright action against an alleged infringer based on infringement of the pre-existing work incorporated in the derivative work.  *See SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 214 (S.D.N.Y. 2009) ("[T]o the extent unregistered versions incorporate protectable elements of a registered version and were copied in an unauthorized manner, the infringement of the underlying work, through the unauthorized copying of the derivative works, serves as the basis for … an action based on the registration of the underlying work.") (internal quotations and

---

[2] Copyright automatically inheres upon the work's creation.  *See* 17 U.S.C. § 102(a) ("Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression . . . .").  Registration with the U.S. Copyright Office is not required to obtain copyright protection.  *See* 17 U.S.C. § 408(a) ("At any time during the subsistence of [the copyright], the owner of copyright or of any exclusive right in the work may obtain registration of the copyright . . . . Such a registration is not a condition of copyright protection.").  However, the Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).  A copyright registration also creates certain benefits.  *See, e.g.,* 17 U.S.C. § 410(c) (providing that a certificate of copyright registration creates a *prima facie* case that the copyright is valid).

citations omitted); *Klauber Bros. v. Russell-Newman, Inc.*, No. 11 Civ. 4985 (PGG), 2013 WL 1245456, 2013 U.S. Dist. LEXIS 42758, at *13-14 (S.D.N.Y. Mar. 26, 2013) (same); *see also* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][2][b] (2008) (explaining that ("since a derivative work by definition consists of matter that would be infringing if it had been derived from the pre-existing work without the copyright [owner's] consent, it follows analytically that the owner of a registered underlying work, in that capacity alone, should be able to maintain" a suit for copying an unregistered derivative work); *cf. Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) ("[B]ecause Streetwise is the owner of the copyright of both the derivative and pre-existing works, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work.").

Plaintiffs are likely to succeed on their trademark infringement claim as well.  To establish liability for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a), a plaintiff must show that it owns a valid and legally protectable mark, and the defendant's use of the mark to identify goods is likely to cause confusion among consumers.  *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 102 (2d Cir. 2010).  Where a plaintiff holds a federal registration of an incontestable mark, such registration constitutes conclusive evidence of its validity and ownership.  15 U.S.C. § 1115(b); *Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F. Supp. 96, 111 (S.D.N.Y. 1989).

With respect to the second element, courts have developed a seven-factor test to determine the likelihood of confusion by use of a protected trademark.  In cases that involve counterfeit goods, however, "a likelihood of confusion exists as a matter of law."  *Coach, Inc. v. Chaos of Muncie*, No. 1:11-cv-0505-JMS-DML, 2012 WL 896420, 2012 U.S. Dist. LEXIS

35062, at *7-8 (S.D. Ind. Mar. 15, 2012); *accord Philips Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891 (HB), 2004 WL 1375277, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004) (finding step-by-step likelihood of confusion analysis not required as "counterfeit marks are inherently confusing") (internal quotations and citations omitted); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("In this case . . . the Court need not undertake a factor-by-factor analysis . . . because counterfeits, by their very nature cause confusion."); *Topps Co. v. Gerrit J. Verburg Co.*, No. 96 Civ. 7302 (RWS), 1996 U.S. Dist. LEXIS 18556, at *18 (S.D.N.Y. Dec. 13, 1996) (finding no need to engage in a complete discussion of the factors "[w]here the marks are identical, and the goods are also identical and directly competitive").

Here, Plaintiffs have established that they are the owners or exclusive licensees of Plaintiffs' Marks, which are distinctive, arbitrary, and in some cases, now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Compl. ¶ 15; Pls' Decls. ¶ 5.  Plaintiffs have also established that Defendants, without Plaintiffs' authorization, are using Plaintiffs' Marks in commerce in connection with the manufacturing, advertising, sale, offering for sale, and/or distrubiton of their Counterfeit Textbooks.  Compl. ¶¶ 40-42; Pls.' Decls. ¶¶ 6-8.  Indeed, Plaintiffs have inspected the Counterfeit Textbooks and determined them to be counterfeit books bearing Plaintiffs' Marks.  *Id.*  Plaintiffs also allege that sales of the Counterfeit Textbooks have caused and are likely to continue to cause confusion, mistake, and/or deception as to the source or origin of Defendants' goods, in that the public, and others, are likely to believe that Defendants' goods originate from, are associated with or are otherwise authorized by Plaintiffs, all to Plaintiffs' irreparable harm.  Compl. ¶ 42.  Lastly, Plaintiffs allege that Defendants' infringement of Plaintiffs' Marks was willful and intentional or deliberately reckless.  *Id.* ¶ 43;

Oppenheim Decl. ¶¶ 8-10.  As such, Plaintiffs are likely to succeed on their claim that Defendants are liable for willful trademark infringement.

**B.** **Plaintiffs Will Suffer Irreparable Harm if the Court Does Not Grant Immediate Relief.**

Irreparable injury in copyright suits can be harm that "occurs to the parties' legal interests" and that "cannot be remedied after a final adjudication."  *Salinger*, 607 F.3d at 81 (footnote omitted).  Harm may be irreparable where the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss.  *Id*.  Types of irreparable harm may include threats of "market confusion," loss of goodwill, or facing the "notoriously difficult" prospect of proving loss of sales.  *See id*.  Although courts may not "presume irreparable harm," *Salinger,* 607 F.3d at 82, courts have consistently found that "[h]arm can be irreparable, and adequate remedies at law lacking, where . . . absent an injunction, the defendant is likely to continue infringing the copyright," *Broad. Music, Inc. v. PAMDH Enters., Inc*., No. 13 Civ. 2255 (KMW), 2014 WL 2781846, 2014 U.S. Dist. LEXIS 84409, at *13-14 (S.D.N.Y. June 19, 2014); *see also Complex Sys., Inc. v. ABN Amro Bank N.V.,* No. 08 Civ. 7497 (KBF), 2014 WL 1883474, 2014 U.S. Dist. LEXIS 64467, at *36 (S.D.N.Y. May 9, 2014); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.,* 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011).

There can be little doubt that Plaintiffs are likely to suffer irreparable harm unless this Court issues a temporary restraining order and preliminary injunction pending the resolution of this case.  Defendants deliberately operate a business devoted to the unauthorized reproduction and distribution of Plaintiffs' copyrighted works.  Defendants' infringing activities are extensive; they sold Chegg over 2,200 counterfeit copies of Plaintiffs' Authentic Works just since August 2016.  The full extent of Defendants' sales of counterfeits is unknown at this time, and given the nature of their illicit business, and the steps they have taken to conceal their true identities, it can

be assumed that discovery will reveal additional counterfeit sales of additional titles published by Plaintiffs. Absent an injunction, Defendants will no doubt continue infringing—indeed, that is the point of their illegal business. In addition, given the anonymous and blatantly illegal manner in which Defendants conduct business, Defendants are likely to try to render themselves judgment proof.

      C.    **<u>Plaintiffs Satisfy the Remaining Two Equitable Factors.</u>**

The remaining two factors decidedly support injunctive relief. In terms of the balance of hardships, "it is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1585, 185 L. Ed. 2d 607 (2013) (quoting *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011)). Further, injunctive relief serves the public interest. It is a premise of copyright law that "the public has a compelling interest in protecting copyright owners' marketable rights to their work." *WPIX*, 691 F.3d at 287. "Inadequate protections for copyright owners can threaten the very store of knowledge to be accessed; encouraging the production of creative work thus ultimately serves the public's interest in promoting the accessibility of such works." *Id.* Accordingly, Plaintiffs have met their burden to show that injunctive relief enjoining Defendants from further infringing Plaintiffs' copyrights is warranted.

**III.    PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE TRANSFER OF DEFENDANTS' ASSETS**

It is well settled that a federal district court may issue injunctive relief to preserve assets as security for a potential monetary judgment. It is also clear that one is warranted in this case.

      A.    **<u>The Court Possesses Ample Authority Under the Federal Rules and Its Inherent Equitable Powers to Attach Defendants' Assets.</u>**

The Court has authority to grant the requested relief under the Federal Rules of Civil

Procedure.  The Court may freeze Defendants' assets for a potential judgment through a Rule 65 preliminary injunction.  S*ee, e.g., Republic of Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir. 1986) (preventing transfer or encumbrance of properties that would place them beyond reach or prevent their reconveyance); *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Va.,* 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001) ("Preliminary injunctions are . . . appropriate to thwart a defendant from making a judgment uncollectible."); *Mason Tenders Dist. Council Pension Fund v. Messera,* No. 95 Civ. 9341 (RWS), 1997 WL 223077, 1997 U.S. Dist. LEXIS 5931, at *13 (S.D.N.Y. May 1, 1997) ("[T]he United States Supreme Court and the Second Circuit have made Rule 65 available to secure assets for the ultimate judgment."); *cf. In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir. 1985) ("[E]ven where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transfer[ring their] assets . . . .") (quotations and citations omitted).

Similarly, independent of its authority under the Federal Rules of Civil Procedure, the Court also has a "great deal of discretion" in "fashioning a remedy pursuant to its inherent equitable powers."  *Pure Power Boot Camp v. Warrior Fitness Boot Camp, LLC*, 587 F. Supp. 2d 548, 570 (S.D.N.Y. 2008).  "[A] preliminary asset freeze is authorized by the district court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief.  Where profits are available as a final remedy – as they are under 17 U.S.C. § 504 – a preliminary asset freeze is an appropriate provisional remedy."  *Lions Gate Films, Inc. v. Doe*, No. 2:14-cv-6033-MMM-AGRx, 2014 WL 3895240, 2014 U.S. Dist. LEXIS 110032, at *16-17 (C.D. Cal. Aug. 18, 2014) (internal quotations and citations omitted).  Here, Plaintiffs seek an equitable accounting and disgorgement of Defendants' illicit profits under the Copyright

15

Act.  Thus, the Court may exercise its equitable authority to preserve the status quo and maintain

its ability to provide an equitable remedy.  *See Datatech Enters. LLC v. FF Magnat Ltd.*, No. C

12-4500 CRB, 2012 WL 4068624, 2012 U.S. Dist. LEXIS 131711, at *11 (N.D. Cal. Sept. 14,

2012).[3]

      In terms of the equitable factors, Plaintiffs have already shown that they are likely to

succeed on the merits.  *See supra* Section II.A.  Moreover, irreparable harm exists where "but for

the grant of equitable relief, there is a substantial chance that upon final resolution of the action

the parties cannot be returned to the positions they previously occupied."  *Brenntag Int'l Chems.,*

*Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir. 1999).  Accordingly, a demonstration of a

defendant's "intent to frustrate any judgment on the merits" qualifies as a showing of

"irreparable harm."  *Sea Carriers Corp. v. Empire Programs, Inc.,* No. 04 Civ. 7395 (RWS),

2006 WL 3354139, 2006 U.S. Dist. LEXIS 83843, at *12-13 (S.D.N.Y. Nov. 20, 2006); *see also*

---

[3] The Supreme Court's decision in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999) does not divest this Court of its equitable authority to freeze assets.  In *Grupo Mexicano*, the Supreme Court held that the "District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages."  *Id.* at 333.  The Supreme Court, however, made a critical distinction between general, unsecured creditors and those, like Plaintiffs, possessing equitable interests in the property at issue and seeking equitable relief.  *Id.* at 324-26.  Indeed, the Second Circuit recently ruled that courts maintain their equitable power to issue a prejudgment asset freeze "where such relief was traditionally available: where the plaintiff is pursuing a claim for final equitable relief and the preliminary injunction is ancillary to the final relief."  *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 131 (2d Cir. 2014) (citing *Grupo Mexicano*, 527 U.S. at 319, and *De Beers Consol. Mines v. United States*, 325 U.S. 212, 219-20 (1945)).  "[C]ourts since *Grupo Mexicano* have found that where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets."  *Quantum,* 144 F. Supp. 2d at 250 n.9; *see also In re Comverse Tech., Inc.*, No. 06-CV-1849 (NGG) (RER), 2006 WL 2568461, 2006 U.S. Dist. LEXIS 62227, at *7 (E.D.N.Y. Aug. 31, 2006) ("[Plaintiffs'] claims are equitable in nature, and therefore an injunction seizing the . . . Defendants' assets derived from their alleged wrongful conduct may be proper."); *Motorola, Inc. v. Abeckaser,* No. 07-CV-3963 (CPS) (SMG), 2009 WL 1362833, 2009 U.S. Dist. LEXIS 40660, at *13 n.4 (E.D.N.Y. May 14, 2009) (finding that *Grupo Mexicano* is "distinguishable" from "an action to recover damages for willful violations of the trademark provisions of the Lanham Act"); *Adelphia Comm'ns Corp. v. Rigas*, No. 02 Civ. 8495 (GBD), 2003 WL 21297258, 2003 U.S. Dist. LEXIS 9349, at *14 (S.D.N.Y. June 4, 2003) (distinguishing case where "plaintiff here seeks not only money damages, but also equitable relief").

*Algonquin Power Corp., Inc. v. Trafalgar Power Inc.,* No. 5:00-CV-1246 (NPM/DEP), 2000 WL 33963085, 2000 U.S. Dist. LEXIS 20331, at *57 (N.D.N.Y. Nov. 8, 2000) ("[D]emonstration of intent to frustrate a judgment will be found to satisfy the requirement of a showing of irreparable harm.") (citing *Signal Capital Corp. v. Frank,* 895 F. Supp. 62, 64 (S.D.N.Y.1995)); *Motorola,* 2009 U.S. Dist. LEXIS 40660, at *12-13 ("[A] plaintiff's showing that a defendant's actions are likely to render a judgment uncollectible qualifies as a showing of irreparable harm."); *Experience Hendrix, LLC v. Chalpin,* 461 F. Supp. 2d 165, 169-70 (S.D.N.Y. 2006) (finding irreparable injury showing satisfied where "there is substantial reason to believe that defendants, unless enjoined, will continue to attempt to frustrate plaintiff's efforts to collect the judgment").

Here, circumstances overwhelmingly evidence Defendants' intent to frustrate the enforcement of a judgment. Defendants deliberately set up a business that sells unauthorized copies of Plaintiffs' copyrighted works in bulk to at least one major book distributor and, in all likelihood, others. In the course of their illicit operations, Defendants also have gone to great lengths to hide their identities and appear to be 170 individual sellers instead of a single or coordinated unit operating the counterfeiting scheme. Further, based on the nature of their business, Defendants cannot be expected to have readily identifiable assets that could be used to satisfy a judgment. Rather, there is a strong chance they will drain or move accounts in an effort to be "judgment proof." *See Microsoft Corp. v. Jun Yan*, No. 3:10-cv-162 (VLB), 2010 U.S. Dist. LEXIS 14934, at *7 (D. Conn. Feb. 18, 2010) (granting temporary restraining order and preliminary injunction freezing assets where defendants operated online piracy operation, used multiple and false contact information, and employed other tactics to avoid compliance with copyright laws); *Elsevier, Inc. v. Does 1-10*, No. 16 Civ. 1245 (RA), Ex Parte Order (S.D.N.Y. Feb. 2, 2016) (Dkt. No. 13) ("[T]he Court finds that Defendants' alleged use of multiple

17

websites, email addresses, and aliases to operate their allegedly infringing enterprise demonstrates the likelihood that, if Defendants were to receive advance notice of Plaintiffs' application for an injunction freezing Defendants' assets, Defendants could moot Plaintiffs' ultimate relief by moving their assets beyond the reach of the Court.").

Finally, the balance of hardships and public policy considerations decidedly favor Plaintiffs. A "judgment of some amount" is more than "likely to be entered in plaintiff's favor, and plaintiff bears a significant risk that defendant's assets will prove inadequate to satisfy such a judgment." *Serio v. Black, Davis & Shue Agency, Inc.,* No. 05 Civ. 15 (MHD), 2005 WL 3642217, 2005 U.S. Dist. LEXIS 39018, at *61 (S.D.N.Y. Dec. 30, 2005). "Without an injunction," Plaintiffs "would suffer a hardship" because they are at risk of "not be[ing] paid monies that . . . are justly due and owed" as compensation for the myriad harms Defendants' illegal conduct has caused them. *Quantum,* 144 F. Supp. 2d at 249 (finding the "balance of hardships also tips decidedly in" Plaintiffs' favor). On the other hand, Defendants will suffer no cognizable hardship. Defendants have no right to use the profits of an illegal enterprise to continue supporting their unlawful activities or for personal uses. There is no conceivable public interest in allowing Defendants to continue causing and profiting from egregious infringement.

**B.    The Court Also Possesses Authority Under New York Law to Attach the Defendants' Assets.**

In addition to the federal rules and its equitable powers, this Court may also act pursuant to New York law. Rule 64 of the Federal Rules of Civil Procedure provides, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. New York law provides that a plaintiff is entitled to prejudgment attachment if it can show "that there is a cause of action, that it is probable that

18

the plaintiff will succeed on the merits, that one or more grounds for attachment provided in Section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  N.Y. C.P.L.R. § 6212(a).

As discussed above, Plaintiffs have a cause of action and it is probable – indeed overwhelmingly likely – that Plaintiffs will succeed on the merits.[4]  *See supra* Section II.A. Based on Plaintiffs' Authentic Works  and Plaintiffs' Marks identified on Exhibits A and B, respectively, Plaintiffs are entitled to up to $16,600,000 in statutory damages as a result of Defendants' copyright and trademark infringement.  *See* 17 U.S.C. § 504(c) (providing for statutory damages of not less than $750 per infringed work and up to $150,000 per work for willful infringement); 15 U.S.C. § 1117(c) (providing for statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark, per type of goods or services sold, offered for sale, or distributed, as the court considers just" and not more than $2,000,000 per counterfeit mark where the use thereof is found to be "willful").  As Defendants have no known counterclaims against Plaintiffs, the requirement that the amount demanded exceeds all known counterclaims is also met.  Thus, the only remaining element is whether one or more grounds for attachment provided in § 6201 exist.

Sections 6201(1) and (3) of the CPLR each provides grounds for an attachment in this case.  Section 6201(1) provides for attachment where "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state."  N.Y.

---

[4] To show a probability of success on the merits for purposes of an application for an order of attachment, a plaintiff must present facts sufficient to establish a *prima facie* case.  *See Considar, Inc. v. Redi Corp., Establishment*, 238 A.D.2d 111, 111, 655 N.Y.S.2d 40, 41 (N.Y. App. Div. 1997).  "Although evidentiary facts making out a *prima facie* case must be shown, plaintiff must be given the benefit of all legitimate inferences and deductions that can be made from the facts stated."  *Id.*  (citation omitted).

C.P.L.R. § 6201(1).  Section 6201(3) of the CPLR provides grounds for an attachment where the defendant, "with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts . . . ."  N.Y. C.P.L.R. § 6201(3).

Here, Defendants have made purposeful attempts to conceal their locations. They cannot be said conclusively to reside in New York for purposes of this provision of the CPLR, and thus the Court can apply CPLR § 6201(1), which is applicable to nondomiciliaires.  Defendants also deliberately run an illegal business and go to great lengths to do so anonymously.  Once given notice, Defendants can be expected to render much more difficult even partial satisfaction of any judgment.  Thus, attachment here is also appropriate under CPLR § 6201(3).  *See ITC Entm't, Ltd. v. Nelson Film Partners,* 714 F.2d 217, 221-22 (2d Cir. 1983) (upholding an order of attachment under § 6201(1) based on insufficient assets to satisfy the potential judgment and questionable business practices); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (granting plaintiff's motion for prejudgment attachment under CPLR 6201 where defendants are "have both incentive and capacity to hide their assets"); *Graubard Mollen Dannett & Horowitz v. Kostantinides*, 709 F. Supp. 428, 432 (S.D.N.Y. 1989) (finding attachment under CPLR § 6201(1) appropriate where plaintiff sought to attach defendant's bank account, because "[t]hese accounts, by nature are liquid and can be easily transferred from the jurisdiction by a simple telephone call"); *cf. JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 487 (S.D.N.Y. 2004) ("Because direct evidence of an intent to defraud or to frustrate the enforcement of a judgment is rare, the intent required under C.P.L.R. § 6201(3) is usually inferred from the circumstances.").

C.    *Ex Parte* **Relief Is Warranted.**

If Defendants receive advance notice of the temporary restraining order attaching Defendants' assets, Defendants will have the opportunity to moot Plaintiffs' ultimate relief simply by moving their assets to another account beyond the reach of this Court.  Accordingly, based on the circumstances of this case, Defendants' assets associated with their illegal activities should be temporarily restrained or attached on an *ex parte* basis.  This Court has the authority to proceed in this fashion.

Rule 65 of the Federal Rules of Civil Procedure provide that a court may issue a temporary restraining order without written or oral notice if, by affidavit or verified complaint, Plaintiffs show that "immediate and irreparable injury, loss, or damage will result … before the adverse party can be heard in opposition . . . ."  Fed. R. Civ. P. 65(b); *see also U2 Home Entm't, Inc. v. Bowery Music City, Inc.,* No. 03 Civ. 8909 (RJH), 2003 WL 22889738, 2003 U.S. Dist. LEXIS 21992, at *3-4 (S.D.N.Y. Dec. 8, 2003).  New York law similarly authorizes the Court to enter a temporary order of attachment without notice.  Section 6210 of the CPLR provides, "Upon a motion on notice for an order of attachment, the court may, without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee as provided in subdivision (b) of section 6214."  N.Y. C.P.L.R. § 6210; *see also Libancell S.A.L. v. Republic of Leb.*, No. 06 Civ. 2765 (HB), 2006 WL 1321328, 2006 U.S. Dist. LEXIS 29442, at *5-6 (S.D.N.Y. May 16, 2006) ("New York allows for the entry of an *ex parte* temporary restraining order pending the outcome of a motion on notice for an order of attachment.").

D.    **The Court Should Require No Bond or, in the Alternative, a Minimal Bond.**

It is well established in the Second Circuit that Rule 65(c) gives the district court wide discretion as to the amount of security required, if any.  *See Doctor's Assocs. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997).  In particular, the court may "dispense with the bond requirement

'where there has been no proof of likelihood of harm.'" *See id.* (quoting *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)); *see also DeWitt Stern Group, Inc. v. Eisenberg,* No. 13 Civ. 3060 (RWS), 2013 WL 2420835, 2013 U.S. Dist. LEXIS 78598, at *16 (S.D.N.Y. June 4, 2013) (finding bond requirement unnecessary).

Plaintiffs respectfully submit that the Court should exercise its discretion to dispense with the filing of a bond in this case. As discussed above, there is no realistic likelihood of harm to Defendants in this case because there is no evidence that Plaintiffs' requested injunction will cause any harm other than stopping Defendants' unlawful conduct.

## IV.    PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY

Plaintiffs seek limited discovery to obtain information that will identify the Doe Defendants and their locations. Allowing such discovery will enable Plaintiffs to amend the Complaint to specifically name Defendants and prevent Defendants from frustrating the Court's ability to provide an appropriate remedy. While discovery generally must await the parties' Rule 26(f) conference, the Court can order otherwise. Fed. R. Civ. P. 26(d)(1). This is the classic case where such an order is not only appropriate, but is necessary. Plaintiffs cannot conduct a Rule 26(f) conference because they do not know the Defendants' true names and locations.

### A.    <u>Legal Standard.</u>

Courts in this district apply a "flexible standard of reasonableness and good cause" to determine whether to grant a motion for expedited discovery prior to a Rule 26(f) conference. *Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (quoting *Ayyash v. Bank Al-Madina,* 233 F.R.D. at 326-27). In *Stern v. Cosby*, then-District Judge Chin explained that this District's flexible standard of "reasonableness" and "good cause" allows for review of an application to proceed on an expedited basis under what "is reasonable in light of all the

circumstances." 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (citing cases).

Even more pertinent here, "[c]ourts in this district have found 'good cause' for expedited discovery to determine the identity of John Doe Defendants where the plaintiff has stated a prima facie case and is unable to identify the defendants without a court-ordered subpoena." *Admarketplace, Inc. v. Tee Support, Inc.,* No. 13 Civ. 5635 (LGS), 2013 WL 4838854, 2013 U.S. Dist. LEXIS 129749, at *4 (S.D.N.Y. Sept. 11, 2013); *see also Arista Records LLC v. Doe*, 604 F.3d 110, 117-24 (2d Cir. 2010); *Malibu Media, LLC v. Doe,* No. 12 Civ. 2950 (JPO), 2012 WL 2001968, 2012 U.S. Dist. LEXIS 77469, at *1 (S.D.N.Y. June 1, 2012) (finding good cause for expedited discovery "because, without it, Plaintiff will not be able to ascertain the identities of the Doe defendants or to effect service upon them"). Expedited discovery "is routinely granted in actions involving infringement and unfair competition." *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841 (RWS), 1997 WL 639037, 1997 U.S. Dist. LEXIS 15957, at *58 (S.D.N.Y. Oct. 14, 1997) (citing cases); *see also Arista Records*, 604 F.3d at 117-24 (affirming denial of motion to quash subpoena served on ISP to disclose identities of Internet users allegedly committing copyright infringement); *Living Scriptures, Inc. v. Doe*, No. 1:10 cv 0182 DB, 2010 WL 4687679, 2010 U.S. Dist. LEXIS 119968, at *4 (D. Utah Nov. 10, 2010) (granting *ex parte* motion for expedited discovery from PayPal in copyright infringement case).

In addition to whether a movant has stated a *prima facie* case and an inability to identify the defendants absent a court order, courts look to the following additional factors in determining whether to allow expedited discovery: (1) the necessity of the subpoenaed information to advance the claim; (2) the specificity of the discovery request; and (3) the defendant-user's expectation of privacy. *See Bloomberg, L.P. v. Doe*, No. 13 Civ. 01787 (LGS), 2013 WL 4780036, 2013 U.S. Dist. LEXIS 130034, at *6-7 (S.D.N.Y. June 26, 2013); *Sony Music Entm't*

*Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565-67 (S.D.N.Y. 2004).  Plaintiffs easily meet these requirements.

      **B.**      **<u>Plaintiffs Satisfy the Factors for Good Cause.</u>**

      As discussed above in Section II.A, *supra*, Plaintiffs have shown a *prima facie* case for copyright and trademark infringement.  Plaintiffs also satisfy the remaining requirements for good cause because:  1) Plaintiffs have a substantial need for the discovery; 2) they seek discrete information tailored to identify Defendants, their whereabouts, and to prevent Defendants from moving their illegal profits beyond the reach of this Court and frustrating the Court's ability to render an equitable remedy; and 3) their need for the information substantially outweighs any argument that Defendants have as to their expectation of privacy in the circumstances here.

      Without the ability to uncover the true names and identities of Defendants, Plaintiffs cannot name and serve the proper defendants and will be unable to litigate their claims.  There is simply no other means for Plaintiffs to ascertain Defendants' true identities without the requested discovery.  Accordingly, Plaintiffs have a substantial need for the discovery.

      As laid out in Plaintiffs' proposed order, Plaintiffs' request seeks discrete information sufficient to identify Defendants and prevent Defendants from attempting to frustrate Plaintiffs' ability to obtain the equitable remedy to which they are entitled.  Plaintiffs do not and will not seek any merits-related discovery.  The proposed request is narrow in scope in that, if the Court grants Plaintiffs' request, the subpoenas will seek only Defendants' true names, current (and permanent) addresses, email, and identification of Defendants' accounts with PayPal and/or other financial institutions or payment processing companies associated with Defendants' illegal business.

      Lastly, Plaintiffs' need for the subpoenaed information outweighs any argument that

Defendants have a cognizable expectation of privacy and anonymity.  Defendants are "entitled

only to a 'minimal expectation of privacy' . . . where Plaintiff [has] alleged what appear to be

meritorious [intellectual property] infringement claims and must determine Defendant's identity

in order to litigate those claims." *Bloomberg*, 2013 U.S. Dist. LEXIS 130034, at \*9; *see also*

*Sony Music*, 326 F. Supp. 2d at 562-67 ("[D]efendants' First Amendment right to remain

anonymous must give way to plaintiffs' right to use the judicial process to pursue what appear to

be meritorious copyright infringement claims").  As the Second Circuit in *Arista Records v. Doe*

found, a defendant's "expectation of privacy for sharing copyrighted [materials] . . . [is] simply

insufficient to permit him to avoid having to defend against a claim of copyright infringement."

604 F.3d at 124.  The court said further, "to the extent that anonymity is used to mask copyright

infringement or to facilitate such infringement by other persons, it is unprotected by the First

Amendment."  604 F.3d at 118; *see also Bloomberg,* 2013 U.S. Dist. LEXIS 130034, at \*6.

Accordingly, Plaintiffs meet all of the factors for immediate, limited discovery to identify

Defendants, including their names, aliases, contact information, and the financial accounts linked

to their illegal activity.

## V.     PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING SERVICE OF PROCESS BY EMAIL ON DEFENDANTS

The Court may authorize alternate service under the applicable federal and New York

rules.  Federal Rule of Civil Procedure 4(e)(1) provides that service may be made upon an

individual within any judicial district of the United States according to "state law for serving a

summons in an action brought in courts of general jurisdiction in the state where the district court

is located."  If Defendants are located in the United States, New York's service of process rules

apply.  Alternatively, if Defendants are located outside the United States, Federal Rule of Civil

Procedure 4(f) applies.  Applying either New York law for individuals in the United States or

federal Rule 4(f) for individuals abroad, alternate service, and, in particular, service by email, is available and within the Court's discretion.

Defendants operate and conduct a national, if not an international, business dedicated to infringing Plaintiffs' and others' rights. Plaintiffs do not currently know where Defendants reside because Defendants have gone to great lengths to conceal their locations. While Defendants have hidden behind apparently fake identities and locations, there is no question that Defendants regularly use email to facilitate their illegal business. Compl. ¶¶ 26-27; Oppenheim Decl. ¶¶ 8, 10, Ex. 1. Defendants have provided Chegg with real email addresses so that Chegg can pay Defendants for the Counterfeit Textbooks via PayPal accounts associated with Defendant's email addresses. *Id.*[5] Under these circumstances, service of process by email is appropriate.

**A.     New York C.P.L.R. § 308 Authorizes Alternate Service on Individuals in the United States.**

The New York Civil Practice Law and Rules § 308(5) provides for service "in such a manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." Paragraphs one, two, and four of §308 all require that a plaintiff know the whereabouts or home or business address of a defendant. Thus, for the reasons explained above, service via §308(1), (2), or (4) is impracticable in this case, and the Court may order service of process via an alternate method. Moreover, courts in New York have authorized service of process by email where service by traditional methods was impracticable. *See, e.g., Safadjou v. Mohammadi*, 964 N.Y.S.2d 801, 803-04 (N.Y. App. Div. 2013) (noting that both New York courts and federal courts have authorized email service of process as an

---

[5] Though Defendants provided names and physical addresses as well, most of the addresses appear fictitious on their face, and Chegg has disclosed that shipping information indicates that the books all shipped from a single geographic area. Compl. ¶ 28.

appropriate method and affirming the trial court's order allowing service upon defendant via email).

**B.** **Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternate Service on Individuals in a Foreign Country.**

Federal Rule of Civil Procedure 4(f)(3) allows the Court to authorize service of process by any "means not prohibited by international agreement as may be directed by the court," so long as the alternative method of service authorized by the Court is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780, at *5-8 (S.D.N.Y. Mar. 13, 2007) (internal quotations omitted); *see also RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLC), 2007 WL 1515068, 2007 U.S. Dist. LEXIS 37713, at *3 (S.D.N.Y. May 24, 2007) ("The decision of whether to allow alternative methods of serving process . . . is committed to the sound discretion of the district court.") (citation and internal quotation marks omitted).

Alternative service under Rule 4(f)(3) "is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969, at *6-7 (S.D.N.Y. Mar. 7, 2013) (citing *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010); *see also See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 116 (D.D.C. 2013). Indeed, a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1014-15; *PCCare247*, 2013 U.S. Dist. LEXIS 31969, at *8. Alternative service of process by email is proper where, as here, the proposed

27

method of service is not prohibited by international agreement and the nature of the defendants' business makes it the most likely method of service to provide prompt, actual notice of the plaintiffs' claims. *See Rio Props.*, 284 F.3d at 1017-18 ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process").

### 1.   Service of Process by Email Is Not Prohibited by International Agreement.

Defendants' addresses are unknown because Defendants have gone to great lengths to conceal their location, as described above. The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention") does not apply in cases such as this, where the address of the person to be served is not known to the party serving process. Hague Convention Art. 1, Nov. 15, 1965, 20 U.S.T. 361; *see also Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 WL 1050307, 2010 U.S. Dist. LEXIS 26536, at *5 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of the Hague Convention … because [defendant's] address is not known to [plaintiff]."); *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *2 (email service authorized and the Hague Convention did not apply because, despite physical addresses having been provided to defendants' domain registrars, the actual addresses could not be confirmed as valid).

In the absence of an international agreement, the Court must look to Rule 4(f)(3), which allows alternative methods for service of process, so long as the method is directed by the Court and comports with constitutional notions of due process. *See Rio Props.*, 284 F.3d at 1016; *PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, at *11; *Prediction Co*, 2010 U.S. Dist. LEXIS 26536, at *3.

28

### 2.    Service of Process by Email Is Reasonably Calculated to Provide Notice to Defendants.

"By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries." *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *8 (internal quotations and citation omitted).  "Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts." *Broadfoot v. Diaz*, 245 B.R. 713, 720 (Bankr. N.D. Ga. 2000).  As a result, courts have fashioned a range of alternative methods of service, including service by email.  *See, e.g., PCCare247,* 2013 U.S. Dist. LEXIS 31969, at *18-20 (ordering service by email and Facebook); *Prediction Co.*, 2010 U.S. Dist. LEXIS 26536, at *1-5 (ordering service by sending summons and complaint to an email address previously used by defendant to communicate with plaintiff and to counsel in New York who had been in contact with defendant); *Philip Morris*, 2007 U.S. Dist. LEXIS 19780, at *9-10 (ordering service by email and fax); *Williams v. Adver. Sex LLC*, 231 F.R.D. 483, 488 (N.D. W. Va. 2005) (ordering service by email and international registered and standard mail).

Email service on a defendant engaged in an illegal business is appropriate and constitutionally acceptable in a case such as this where the plaintiff is unable to personally serve the defendant at a physical address and has shown that email is the most effective means of providing the defendant with notice of the action.  *See Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *9 (finding that service by email was appropriate where, as here, defendants "conduct business extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email"); *McCluskey v. Belford High Sch.*, No. 2:09-14345, 2010 WL 2696599, 2010 U.S. Dist. LEXIS 62608, at *9-10 (E.D. Mich. June 24, 2010) (concluding that service via email was appropriate where the defendants relied on an email address to conduct

29

their business); *Elcometer, Inc. v. TQC-USA, Inc.,* No. 12-cv-14628, 2013 WL 592660, 2013 U.S. Dist. LEXIS 19874, at *7 (E.D. Mich. Feb. 14, 2013) (same); *Gaffigan v. Doe,* 689 F. Supp. 2d 1332, 1342 (S.D. Fla. 2009) (finding service by email appropriate where defendants used email to confirm orders placed on their websites); *Microsoft Corp. v. Doe*, No. 12-CV-1335 (SJ) (RLM), 2012 U.S. Dist. LEXIS 162122, at *8 (E.D.N.Y. Nov. 13, 2012) (upholding service of process by email where defendants remained anonymous and concealed their locations, but responded to email).

"If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them." *Williams*, 231 F.R.D. at 487 (quoting *Broadfoot*, 245 B.R. at 721). Thus, email service has the greatest likelihood of reaching e-commerce merchants, particularly the Defendants here who are adept at hiding their identity and location. *See Broadfoot*, 245 B.R. at 722 (authorizing email and fax service and noting, "[a] defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party.").

Accordingly, service on Defendants by email will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiffs' claims. Email will not only be effective in this case, but will be the most reliable means of communicating with Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the relief requested herein.

30

Dated:  November 1, 2016

Respectfully submitted,

Matthew J. Oppenheim
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
Tel:  (202) 480-2999
matt@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs Pearson Education,
Inc. and McGraw-Hill Global Education
Holdings, LLC*