UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

MCGRAW-HILL GLOBAL EDUCATION
HOLDINGS, LLC, PEARSON
EDUCATION, INC., CENGAGE
LEARNING, INC., and ELSEVIER, INC.,     :     16cv8530

        Plaintiffs,     :     OPINION & ORDER

        -against-

MEHUL MATHRANI, ANKUSH
SHARMA, ANSHOO SHARMA, and
IBESTBARGAINS, LLC,

        Defendants.

---------------------------------

WILLIAM H. PAULEY III, District Judge:

        McGraw-Hill Global Education Holdings, LLC, Pearson Education, Inc., Cengage Learning, Inc., and Elsevier Inc. bring this copyright and trademark infringement against Mehul Mathrani, Ankush Sharma, Anshoo Sharma, and iBestBargains, LLC.[1] iBestBargains moves to dismiss the Second Amended Complaint ("Complaint") under Rule 12(b)(2) and Rule 12(b)(6). In addition, iBestBargains moves to strike two affidavits appended to Plaintiffs' opposition to iBestBargains' motion. For the reasons that follow, iBestBargains' motions are denied.

## BACKGROUND

        This case is one front in a multi-theater war by major textbook publishing companies against textbook counterfeiters in this District. The following facts are gleaned from

---

[1] This action is stayed against Mathrani, who has filed a bankruptcy petition. On November 22, 2017, this Court granted Plaintiffs' motion for alternative service on Ankush Sharma and Anshoo Sharma, and Plaintiffs served the Sharma Defendants by email on December 4, 2017. (See ECF No. 94.)

the Complaint and are presumed true for the purposes of this motion. Plaintiffs are publishers and distributors of physical and digital textbooks and own copyrights in certain textbooks at issue in this action. (Compl. ¶¶ 21-23.) These textbooks also bear certain trademarks and service marks that Plaintiffs registered with the United States Patent and Trademark Office. (Compl. ¶ 24.)

The crux of the Complaint is that Defendants infringed Plaintiffs' copyrights and trademarks by engineering an international scheme to reproduce, import, distribute, and sell counterfeit versions of Plaintiffs' textbooks beginning in 2015 and continuing to this day. (Compl. ¶¶ 1, 3, 27.) Defendants—such as Mehul Mathrani in the United States and Ankush Sharma and Anshoo Sharma in India—allegedly perpetrated the scheme by creating a profusion of online accounts with wholesalers to whom they then sold counterfeit textbooks using automated "buyback" tools on the wholesalers' websites. (Compl. ¶¶ 18, 31-35, 39-41.) To ship the books to the wholesalers, the Indian operators of the online accounts sometimes provided the textbooks to shipping companies known as "freight forwarders" for delivery into the United States. (Compl. ¶¶ 35-36.) Once the books arrived in the United States, they were delivered to the wholesalers. (Compl. ¶¶ 14-15, 36.) Other times, the Indian operators of the online accounts shipped the counterfeit textbooks from India with the help of international logistics companies. (Compl. ¶ 40.) In addition, Plaintiffs allege that Defendants—such as Mehul Mathrani and iBestBargains—received bulk shipments of textbooks from India by seaborne freight, which they re-sold to wholesalers and individual consumers through online marketplaces, such as Amazon. (Compl. ¶¶ 31, 42-45.) Relevant to the issues raised in iBestBargains' motions, the Complaint alleges that iBestBargains purchased counterfeit textbooks from Radhika International, a known provider of counterfeit textbooks, for resale in the United States, and that the Sharma Defendants

directed counterfeit textbooks to iBestBargains for resale.

DISCUSSION

I.  Personal Jurisdiction

On a Rule 12(b)(2) motion, a plaintiff bears the burden of showing jurisdiction. Metro. Life. Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). The showing a plaintiff must make "varies depending on the procedural posture of the litigation." Dorchester Financial Secs., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013) (quotation marks omitted). Where a court has allowed jurisdictional discovery but has not held an evidentiary hearing, a plaintiff need only make a prima facie showing that "include[s] an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990); DH Servs., LLC v. Positive Impact, Inc., 2014 WL 496875, at *2 (S.D.N.Y. Feb. 5, 2014) (explaining that "[c]onclusory allegations will not suffice to meet this burden"). This showing may be made through pleadings, affidavits, and supporting materials. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). A court construes the pleadings and affidavits in the light most favorable to the plaintiff and resolves all doubts in plaintiff's favor, notwithstanding "any controverting presentation by the moving party." Dorchester, 722 F.3d at 85-86.

For a court to exercise personal jurisdiction, three requirements must be met: (1) "the plaintiff's service of process upon the defendant must have been procedurally proper"; (2) "there must be a statutory basis for personal jurisdiction"; and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles." Waldman v. Palestinian Liberation Org., 835 F.3d 317, 327 (2d Cir. 2016). Here, neither party disputes that Plaintiffs' service of process was procedurally proper. Instead, the parties' disagreement turns on the latter

two requirements.

## A. iBestBargains' New York Contacts

In determining the strength of the defendant's contacts under section 302(a) and the Due Process Clause for purposes of specific jurisdiction, a court considers "the totality of [a defendant's] contacts with the forum state." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010). Moreover, defendants that "are separate entities . . . are presumptively entitled to have independent existence," and a plaintiff must establish a basis for exercising personal jurisdiction over each defendant. Cengage Learning Inc. v. Buckeye Books, 531 F. Supp. 2d 596, 599 (S.D.N.Y. 2008) ("Lumping all the 'defendants' together for purposes of alleging connections to New York is . . . patently insufficient.").

With respect to iBestBargains, the Complaint alleges that (1) Radhika International sold counterfeit textbooks to iBestBargains for resale; (2) the Sharma Defendants directed counterfeit textbooks to iBestBargains for resale; and (3) Plaintiffs purchased counterfeit textbooks, including Economics: Private and Public Choice (Cengage) and Computer Organization and Design (Elsevier), from iBestBargains. (Compl. ¶¶ 42, 45, 47.) Plaintiffs attach a declaration describing their investigator's "test" purchases from third-party online sellers of textbooks distributed by iBestBargains, including the two examples enumerated in paragraph 45 of the Complaint. (Declaration of Michael Candore, ECF No. 83 ("Candore Decl.").) These test purchases, which Plaintiffs determined to be counterfeit, were shipped from Texas addresses associated with iBestBargains to an investigator's address in Maryland.

Another declaration submitted by Plaintiffs describes three categories of New York contacts. First, between January 1, 2015 and September 17, 2017, iBestBargains made 1,124 sales of books to New York consumers on three online marketplaces, representing 7.09%

4

of iBestBargains' total sales on those marketplaces. (Declaration of Kerry M. Mustico, ECF No. 82 ("Mustico Decl.") ¶ 6.) iBestBargains derived $21,741.44 in revenue from these New York sales, which constitutes 6.23% of its total revenue on these marketplaces. (Mustico Decl., Ex. 2.) Although iBestBargains made sales through other online marketplaces, it has not produced the corresponding sales information. (Mustico Decl. ¶¶ 8-9.) Second, the declaration avers that iBestBargains operates a website at www.acadymix.com through which it sells Plaintiffs' textbooks and advertises shipment anywhere in the United States. (Mustico Decl. ¶ 10.) Third, Plaintiffs allege that iBestBargains granted a power of attorney authorizing Priority Airfreight NY, Ltd., a New York entity, to act on behalf of iBestBargains with respect to "all shipments of books imported, exported, or transported to or by" iBestBargains. (Mustico Decl. ¶ 11.) In the four-and-a-half months after executing the power of attorney, iBestBargains received 39 shipments of books totaling 27,712 pounds from Radhika International. (Mustico Decl. ¶ 11.)

B. New York's Long-Arm Statute

For an out-of-state defendant in a federal question case, "federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." Sunward Elecs., Inc. v. McDonald, 362 F.2d 17, 22 (2d Cir. 2004). Here, neither the Lanham Act nor the Copyright Act provide for national service of process, and thus, New York's long-arm statute governs the analysis. Sunward Elecs., Inc., 362 F.2d at 22; Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 646 (S.D.N.Y. 2008).

Plaintiffs rely on two provisions of New York's long-arm statute to support the exercise of jurisdiction over iBestBargains: CPLR §§ 302(a)(1) and 302(a)(3). CPLR § 302(a) provides that for "a cause of action arising from any of the acts" enumerated below, New York courts may exercise jurisdiction over any non-domiciliary who in person or through an agent:

5

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

. . .

3. commits a tortious act without the state causing injury to person or property within the state, . . . if he

    i. regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

    ii. expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . .

CPLR § 302(a)(1) & (3).

This Court need look no further than § 302(a)(1).[2] To establish personal jurisdiction under that provision, two requirements must be satisfied: (1) the "defendant must have transacted business within the state"; and (2) "the claim asserted must arise from that business activity." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013). As to the first requirement, the transaction of business within New York requires "some purposeful activities within the State that would justify bringing the nondomiciliary defendant before the New York courts." DH Servs., LLC, 2014 WL 496875, at *3 (citing SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n, 18 N.Y.3d 400, 404 (N.Y. 2012)). Purposeful activities are those in which a defendant, "through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (N.Y. 2007). The "arising from" element does not require "a causal link between the defendant's New York business

---

[2] In its reply, iBestBargains contends that because Plaintiffs represented at the pre-motion conference that personal jurisdiction was supported by CPLR § 302(a)(3), their arguments for personal jurisdiction under CPLR § 302(a)(1) should be stricken. Of course, Plaintiffs made that representation before this Court granted limited jurisdictional discovery, and in any event, the complaint alleges that personal jurisdiction is permitted by CPLR § 302 based on Defendants' transaction of business within New York—an argument that sounds in CPLR § 302(a)(1). (Compl. ¶ 7.)

activity and a plaintiff's injury," but rather a "relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." Licci ex rel. Licci, 732 F.3d at 168. Put differently, there must be "some articulable nexus between the business transacted and the cause of action sued upon." McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981).

Plaintiffs rely extensively on Chloe, which "update[d] [the Second Circuit's] jurisprudence on personal jurisdiction in the age of internet commerce." Chloe, 616 F.3d at 165. In Chloe, the Second Circuit held that personal jurisdiction could be exercised over an out-of-state employee where the employee had shipped a single counterfeit Chloe handbag into New York, combined with his employer's "extensive business activity involving New York." Chloe, 616 F.3d at 165. There are certainly aspects of Chloe that are analogous—the defendant employee had shipped a counterfeit handbag to plaintiffs' counsel in New York, who had placed an order through defendants' website as a test purchase. Chloe, 616 F.3d at 162. The defendant employer's "extensive business contacts with New York customers" included operating a website that offered counterfeit handbags for sale to New York consumers and facilitated the shipment of handbags to New York. Chloe, 616 F.3d at 166. The employer had also made 52 sales of non-Chloe merchandise into New York through its website and through "trunk shows." Chloe, 616 F.3d at 166-67.

To be fair, Chloe was concerned with whether the court could exercise personal jurisdiction over the employee defendant, who had moved to dismiss under Rule 12(b)(2). Nevertheless, Chloe's discussion of the relevant minimum contacts between the employer defendant and New York is instructive on what constitutes a sufficient nexus between a defendant's New York contacts and the cause of action to satisfy the "arising from" prong.

7

There, the district court characterized the defendant's non-Chloe sales as "purposeful availment of New York only for 'some business activity,' but not for 'the purpose of selling Chloe handbags—the only activity upon which Plaintiffs' complaint is based.'" Chloe, 616 F.3d at 167 (emphasis in original). But the Second Circuit rejected that finding as overly narrow, reiterating that "the nexus requirement . . . merely requires the cause of action to 'relate to' defendant's minimum contacts with the forum." Chloe, 616 F.3d at 167.

Applying these principles, iBestBargains' 1,124 sales to New York customers through online marketplaces constitute relevant minimum contacts, even if not all of those sales were counterfeit or of Plaintiffs' textbooks.[3] Construing the record in the light most favorable to Plaintiffs, these business transactions are essentially the same conduct on which Plaintiffs' claims are premised—i.e., the sale of counterfeit textbooks through online marketplaces. The fact that iBestBargains' sales were made through online marketplaces as opposed to its own website, as in Chloe, presents an additional complication. In determining whether a defendant who sells through Internet storefronts is subject to personal jurisdiction, courts distinguish between "commercial vendors who use it 'as a means for establishing regular business with a remote forum'" and "occasional sellers who use an internet service once to sell goods to the highest bidder who happens to be in the forum state." Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016). Plaintiffs allege that iBestBargains "has made multiple sales to New York consumers each month since January 2015." (Mustico Decl. ¶ 6; see also Mustico Decl., Ex. 2.) This regular offering and sale of textbooks to New York through online marketplaces puts iBestBargains in the first category,

---

[3] While personal jurisdiction cannot be premised on Plaintiffs' investigators' test purchases because those textbooks were shipped into Maryland, those test purchases—which were made through another online marketplace—suggest that at least some of the 1,124 New York sales may be of counterfeit copies of Plaintiffs' textbooks.

8

even if they "do not control [their online storefronts] or [their] interactivity to the same extent that they control" their own website. Lifeguard Licensing Corp., 2016 WL 3748480, at *3; see also EnviroCare Techs., LLC v. Simanovsky, 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012).

In any event, Plaintiffs' averments that iBestBargains operates a website through which customers in the United States—including those in New York—may purchase Plaintiffs' textbooks provides an additional basis for jurisdiction under § 302(a)(1). Lifeguard Licensing Corp., 2016 WL 3748480, at *3 (describing a website "that does more than provide information about a product and allows customers to purchase goods online" as a "highly interactive website" that may provide grounds for personal jurisdiction under § 302(a)). Finally, the power of attorney that iBestBargains granted to Priority Airfreight NY also supports a finding of jurisdiction. Plaintiffs allege that iBestBargains, through Priority Airfreight NY, received 39 shipments of textbooks from Radhika International, which it claims to have sold counterfeit textbooks to iBestBargains for resale. Generally, "a written power-of-attorney agreement is a formal contract and creates a principal-agent relationship." Lancaster v. Zufle, 165 F.R.D. 38, 41 (S.D.N.Y. 1996). A non-domiciliary principal may be subject to jurisdiction based on the actions of its domiciliary agent if the agent acted "for the benefit of, and with the knowledge and consent of the non-resident principal," and the principal exercised "some control" over the agent. CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 366 (2d Cir. 1986). Here, the power of attorney expressly authorizes Priority Airfreight NY to act on behalf of iBestBargains with respect to the import, transport, and export of merchandise shipped or consigned to or by iBestBargains. The fact that the power of attorney is revocable upon written notice also indicates some degree of control by iBestBargains. (See Mustico Decl., Ex. 5.)

In response, iBestBargains submits two affidavits from its managing member,

9

Chanana Deepali. The first broadly disavows all connections to New York. The second merely denies various factual allegations made by Plaintiffs in their opposition papers. The Deepali affidavits are unpersuasive, however, not only because of their conclusory and self-serving nature, but also because some of the averments are flatly contradicted by iBestBargains' own jurisdictional discovery.[4] In any event, they do not alter the fact that Plaintiffs make a prima facie showing that § 302(a)(1) permits jurisdiction based on their pleadings and affidavits.

C. Constitutional Due Process

Having found that New York's long-arm statute permits personal jurisdiction, this Court proceeds to "analyze whether personal jurisdiction comports with the Due Process Clause." Chloe, 616 F.3d at 164. The due process inquiry consists of two components—the "minimum contacts" inquiry and the "reasonableness" inquiry.

1. Minimum Contacts

The minimum contacts inquiry considers "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." Chloe, 616 F.3d at 164 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). When the claim "arises out of, or relates to, the defendant's contacts with the forum," minimum contacts to support specific jurisdiction exists "where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." Licci ex rel. Licci, 732 F.3d at 170.

Here, iBestBargains' contacts with New York satisfy the minimum contacts prong

---

[4] For instance, iBestBargains' first affidavit states that iBestBargains "has not and currently does not, target any business activities towards residents of the State of New York" and that it "does not derive substantial (if any) revenue from goods used or consumed in the State of New York," statements which are plainly belied by their jurisdictional discovery. (Affidavit of Chanana Deepali, ECF No. 80-1.) As another example, iBestBargains' second affidavit states that iBestBargains "is not transacting business in New York through Priority Airfreight," despite the power of attorney produced by Priority Airfreight NY's affiliate, Aramex. (Supplemental Affidavit of Chanana Deepali, ECF No. 91-1, ¶ 5.)

of the constitutional inquiry for the same reasons that they satisfy the statutory inquiry. Accord Licci ex rel. Licci, 732 F.3d at 170 (noting that while "section 302(a)(1) . . . and constitutional due process are not coextensive," cases in which personal jurisdiction is permitted under the long-arm statute but is prohibited under the due process analysis are "rare"). Specifically, iBestBargains has purposefully availed itself of the privilege of doing business in New York by conducting sustained sales of textbooks to New York customers through online marketplaces, by operating an interactive website to offer textbooks for sale (including to New York customers), and by reaching out to New York and executing a power of attorney with a New York entity through which it imported allegedly counterfeit textbooks. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) ("[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.").

    2. Reasonableness

    The reasonableness analysis pertains to whether exercising personal jurisdiction comports with "traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316. In the Second Circuit, a court evaluates the following factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the state in furthering substantive social policies. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113-14 (1987). When a plaintiff has made a threshold showing of minimum contacts, the exercise of jurisdiction is favored. Metro. Life Ins. Co., 84 F.3d at 568. However, such exercise may be defeated "where the defendant

presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Metro. Life Ins. Co., 84 F.3d at 568.

Here, iBestBargains does not offer <u>any</u> argument that other considerations outweigh Plaintiffs' showing of minimum contacts. Cf. Peeq Media, LLC v. Buccheri, 2016 WL 5947295, at *5 (S.D.N.Y. Oct. 13, 2016) (finding defendants' lack of arguments about reasonableness aside from objections to minimum contacts to be "generalized complaints of inconvenience" that "do not add up to 'a compelling case'"). Moreover, this Court concludes that exercising personal jurisdiction over iBestBargains is reasonable in light of iBestBargains' significant contacts with the forum. While there will be some burden on iBestBargains in traveling to New York to defend, that burden is minimal given "the conveniences of modern communication and transportation." Licci ex rel. Licci, 732 F.3d at 174. Moreover, New York undoubtedly has an interest in adjudicating the claims of its resident corporate entities, particularly those that have already brought similar actions against other textbook counterfeiters in the Southern District of New York. See Pearson Educ., Inc. v. Kumar, 721 F. Supp. 2d 166 (S.D.N.Y. 2010) (citing cases brought by Pearson Education, McGraw Hill, and Cengage Learning). Similarly, New York has a "manifest interest in providing effective means of redress for its residents." Chloe, 616 F.3d at 173. Here, where all other defendants have been dismissed, are in bankruptcy, or have recently been served, this action may be the sole avenue through which Plaintiffs can obtain meaningful relief.

## II. Failure to State a Claim

iBestBargains' motion under Rule 12(b)(6) is premised solely on the argument that lumping all defendants together in the complaint is insufficient to provide fair notice of the

grounds for the claims made against each specific defendant.[5] In other words, iBestBargains challenges the sufficiency of the complaint in "giving [it] notice of the allegations against it—not . . . the legal sufficiency of the [Plaintiffs'] claims therein." See Nowak v. Syva Co., 1989 WL 103674, at *2 (W.D.N.Y. Aug. 25, 1989).

Under Rule 8, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). The purpose of Rule 8(a) "is to provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial." Strunk v. U.S. House of Representatives, 68 F. App'x 233, 235 (2d Cir. 2003). A complaint is insufficient if it merely contains "unadorned, the defendant-unlawfully-harmed-me accusation[s]" or "naked assertion[s] devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted). Dismissal is generally reserved for a complaint that is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Aghaeepour v. N. Leasing Sys., Inc., 2015 WL 7758894, at *4 (S.D.N.Y. 2015) (citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)).

Here, the complaint alleges the roles that the Defendants—including iBestBargains—played in the counterfeiting scheme. (See, e.g., Compl. ¶¶ 13-18, 35-36, 38, 42, 44-45, 47.) Plaintiffs also allege that the infringement began in 2015 and continues to this day. (Compl. ¶ 27.) See LivePerson, Inc. v. 24/7 Customer, Inc., 83 F. Supp. 3d 501, 508 (S.D.N.Y. 2015) (explaining that a complaint "in which the plaintiff alleges continued infringement from a

---

[5] iBestBargains argues for the first time in its reply and at oral argument that Plaintiffs' copyright claims fail because they do not allege when the infringement occurred or identify every allegedly infringed work. Its reply also advances the argument that Plaintiffs' failure to allege a use in commerce is fatal to their trademark infringement claims. This Court need not consider arguments made for the first time in a reply brief or at oral argument. See Standard Gen. L.P. v. Travelers Indem. Co. of Conn., --- F. Supp. 3d ---, 2017 WL 3601181, at *7 (S.D.N.Y. 2017) (oral argument) In re Jumei Int'l Holding Ltd. Sec. Litig., 2017 WL 95176, at *4 n.3 (S.D.N.Y. Jan. 10, 2017) (reply). Even if it did, however, this Court would reach the same conclusions.

13

specific time to the present may survive" a motion to dismiss). Moreover, Plaintiffs append an exhibit to the Complaint identifying the allegedly infringed textbooks that Plaintiffs have discovered to date, which includes the two textbooks that Plaintiffs offer as examples of iBestBargains' infringing activities. (Compare Compl. Exs. A & B, with Compl. ¶ 45.) Requiring Plaintiffs to name all of the infringed works that may be part of the alleged counterfeiting scheme at the pleading stage would be a fool's errand—that is the point of discovery.

In sum, while the Complaint's references to all Defendants as a collective necessarily "muddles the clarity of the allegations," Vantone Grp. Ltd. Liability Co. v. Yangpu NGT Indus. Co., 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015), they are sufficient to give fair notice to iBestBargains of the allegations and claims it is facing. Accordingly, iBestBargains' motion to dismiss pursuant to Rule 12(b)(6) is denied.

III.   iBestBargains' Supplemental Requests

iBestBargains challenges consideration of any facts obtained in jurisdictional discovery as beyond the four corners of the Complaint and asks this Court to exclude from evidence any jurisdictional discovery in direct conflict with or unsupported by the Complaint. The decision to allow jurisdictional discovery and "to what extent, are matters committed to a trial judge's broad discretion." In re Terrorist Attacks on Sept. 11, 2011, 689 F. Supp. 2d 552, 566 (S.D.N.Y. 2010) (citing Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Rep., 582 F.3d 393, 401 (2d Cir. 2009)). When this Court granted limited jurisdictional discovery on three discrete topics with the consent of the parties, iBestBargains did not move for reconsideration. Instead, perhaps experiencing a case of l'esprit de l'escalier, iBestBargains only objected to the scope of the jurisdictional discovery requests two days before the deadline to

14

respond—a challenge that this Court rejected. (See Order, ECF No. 76.) While personal jurisdiction must "[e]ventually . . . be established by a preponderance of the evidence, either at an evidentiary hearing or at trial," iBestBargains' request to exclude jurisdictional discovery from consideration on this motion is premature. See Capitol Records, Inc. v. MP3tunes, LLC, 2009 WL 3364036, at *9 (S.D.N.Y. Oct. 16, 2009).

Not to be deterred, iBestBargains moved to strike Plaintiffs' affidavits on the basis that they are not admissible evidence. In its filing, iBestBargains also interposes various evidentiary objections to statements in those affidavits and seeks "a ruling from the court on the objections to the entry of Kerry Mustico's and Michael Candore's affidavits into evidence in which a hearing is scheduled for December 1, 2017." (Objection of Entry of Plaintiffs' Affidavits Alternatively Motion to Strike Plaintiffs' Affidavits, ECF No. 93, at 1.) District courts "have broad discretion in formulating the appropriate procedure to consider its personal jurisdiction, including the decision to conduct an evidentiary hearing." Harris v. Wu-Tang Prods., Inc., 2006 WL 1677127, at *6 (S.D.N.Y. June 16, 2006). Because an evidentiary hearing was unnecessary, iBestBargains' supplemental requests to exclude jurisdictional discovery and to strike Plaintiffs' affidavits are denied as moot.

CONCLUSION

For the foregoing reasons, iBestBargains' motion to dismiss is denied. iBestBargains' requests to exclude jurisdictional discovery and to strike Plaintiffs' affidavits are also denied. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 79 and 93.

Dated: December 12, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.